EX PARTE BURTON.

5-3208          373 S. W. 2d 409

Opinion delivered December 23, 1963.

G. *Thomas Eisele,* for Petitioner.

GEORGE ROSE SMITH, J. This is an original petition filed by Marion Burton, a practicing attorney, for a writ of certiorari to quash two orders entered by the Honorable Wiley W. Bean. The first order committed Burton to jail for an asserted contempt of court. The second order suspended Burton's license to practice law in the Fifth Judicial District until he should exculpate himself from certain supposed wrongdoing.

Although this proceeding is in form *ex parte,* a copy of Burton's petition was served upon Judge Bean, who has filed a response defending the validity of his orders. Thus the proceeding is not uncontested. The parties have filed, as exhibits to their pleadings, such parts of the record made at the trial level as they have thought necessary for an understanding of the case.

In October of 1963 there was pending in the Conway Circuit Court, presided over by Judge Bean, a libel suit brought by C. C. Brewer, the county clerk, against Gene Wirges, the editor of a newspaper at Morrilton. Apparently one of the issues concerned the manner in which the paper had reported the details of an election contest filed by Harding Byrd, an unsuccessful candidate for the office of school director.

At the trial of the libel suit Burton, who was not an attorney of record in the case, was called as a witness for the defendant Wirges. Burton had represented Byrd in the election contest. Burton testified at some length about his investigation of the case, the preparation and filing of the complaint, and the alleged irregularities in the election procedure. In the course of his testimony Burton indicated that Byrd was expected to pay the court costs in the case, but it was not anticipated that he would pay an attorney's fee to Burton, who was employed by the Republican party and looked to that organization for his compensation.

Judge Bean seems to have concluded that Burton's conduct in the election case may have amounted to champerty or maintenance. After the libel suit was submitted to the jury Judge Bean went to his chambers and sent for Burton. Also present were the attorneys for Brewer, the county sheriff, a deputy prosecuting attorney, and a few others not identified in the record before us. Burton was given no notice of any kind about the nature or purpose of the proceeding. At first he was wholly without counsel. Later on his present attorney, who had represented Wirges, was invited to come into the room, but Judge Bean refused to allow this lawyer to take part in the hearing, directing him "to sit there and listen."

At the beginning of the interrogation Burton was sworn, without protest. Judge Bean stated that he wanted to ask a few questions to clarify his understanding of Burton's testimony in the libel case. After answering some preliminary questions Burton requested that he be told the purpose of the proceeding. This request was repeated two or three times in the course of the hearing, but the only answer given by Judge Bean was that he was attempting to see if his notes were accurate. Burton pointed out that his testimony was a matter of record and spoke for itself. At one point Judge Bean indicated that the deputy prosecuting attorney was present in an official capacity. Finally Burton, after his protests had proved to be unavailing, stated that in view of the nature of the proceeding he thought he should refuse to answer any further questions. The examination then closed in this manner:

"The Court: All right. For the record, then, Mr. Sheriff, take him to jail and keep him there until the Court orders you to release him or until he makes up his mind that he will answer the questions. Now, would you like to go further with the proceeding?

"Mr. Burton: No, sir.

"The Court: Go on to jail."

Burton seems to have remained in the county jail for several hours. He was then recalled by Judge Bean, who said that he had decided to let Burton go home. The judge added, however, that he could not let Burton continue to practice in his district until the matter was cleared up. A day or so later an order was entered suspending Burton's license to practice in the district until "such time as a hearing may be had exculpating the said Marion B. Burton from wrongdoing as an attorney at the Bar."

We declare without hesitation that both the order committing Burton to jail and the order suspending him from practice were void for want of jurisdiction.

It is not contended, and could not reasonably be contended, that the pendency of the libel suit justified the attempt to catechize Burton. The two proceedings were completely separate. In no event could information elicited from Burton have been of use in the libel case.

What took place in Judge Bean's chambers was not in fact a judicial proceeding. No permissible judicial inquiry was before the court. Under our constitution and laws a judge cannot, by virtue of his office, resolve himself into a court of inquiry for the investigation of real or supposed misconduct that may have come to his attention in his courtroom or upon the street. *Ketcham* v. *Commonwealth,* 204 Ky. 168, 263 S. W. 725; *Manning* v. *Ketcham,* 6th Cir., 58 F. 2d 948. No one's liberty would be secure if our people might abruptly be called before a judge, as Burton was here, with the alternative of answering questions or going to jail.

A court's power to punish for contempt does not exist in a vacuum. It cannot be exercised simply because a judge is on the bench or in chambers. The power is merely incidental and auxiliary to the judicial authority conferred by law upon the court. When there is a total lack of jurisdiction, as there was here, there can be no punishment for a refusal to submit to interrogation. *Joyce* v. *Hickey,* 337 Mass. 118, 147 N. E. 2d 187. There is no hint that Burton, even in trying circumstances, dis-

played any disrespect toward Judge Bean; to the contrary, he seems to have acted with commendable dignity and composure.

The purported disbarment order is similarly void. A lawyer's right to practice his profession is a valuable privilege, conferred in the first instance by this court and not to be taken from him without notice and a hearing as provided by law. Even when, a century ago, the circuit courts had the authority to admit attorneys to practice, such a court could not disbar a lawyer summarily. *Beene* v. *State,* 22 Ark. 149. There is still less justification for that procedure today.

The writ of certiorari is granted; both the orders are declared to have been unauthorized and void.