STATE BAR OF MICHIGAN *v* WOLL

1. ATTORNEY AND CLIENT—DISBARMENT—CRIMINAL LAW—CONSTITU-
TIONAL LAW.
        A disbarment proceeding is quasi-criminal in character although
        it is not necessary to observe all of the rules of criminal law
        and procedure in a disbarment proceeding; thus, many of
        the safeguards afforded accused criminals contained in the
        United States Constitution have been made applicable to dis-
        barment proceedings.

2. ATTORNEY AND CLIENT—DISBARMENT—CONSTITUTIONAL LAW—
SELF-INCRIMINATION.
        The privilege against self-incrimination granted by the Michigan
        and United States Constitutions apply to a defendant attorney
        in disbarment proceedings (US Const, Am V; Const 1963, art
        1, § 17).

3. ATTORNEY AND CLIENT—DISBARMENT—CRIMINAL LAW—CONSTITU-
TIONAL LAW—SELF-INCRIMINATION.
        Comments made to a fact-finding body by a prosecutor con-
        cerning an accused's silence in disbarment proceedings are
        *prohibited by the self-incrimination clause of the United*
        States and Michigan Constitutions (US Const, Am V; Const
        1963, art 1, § 17).

4. ATTORNEY AND CLIENT—DISBARMENT—CONSTITUTIONAL LAW.
        A defendant attorney did not waive his Fifth Amendment rights
        by testifying under the provisions of a State Bar Rule in
        disbarment proceedings and comments by counsel for the
        State Bar on his initial refusal to answer a specific question,
        based on the Fifth Amendment, were improper and violated
        defendant's constitutional rights (US Const, Am V; Const
        1963, art 1, § 17; State Bar Rule 15).

REFERENCES FOR POINTS IN HEADNOTES
[1] 7 Am Jur 2d, Attorneys at Law § 60.
[2–4] 7 Am Jur 2d, Attorneys at Law §§ 17, 68.

Appeal from State Bar Grievance Board. Submitted December 7, 1971. (No. 1 December Term 1971, Docket No. 53,531.) Decided March 9, 1972.

Disciplinary proceedings against Arthur S. Woll. Order entered suspending defendant from practicing law for three months and requiring defendant to reimburse the State Bar of Michigan for expenses incurred by reason of the proceedings. Defendant appeals. Reversed.

*Louis Rosenzweig,* for the State Bar of Michigan.

*Ivan E. Barris,* for defendant on appeal.

SWAINSON, J. On April 15, 1970, an Assistant Grievance Administrator of the State Bar of Michigan filed request for an investigation of attorney Arthur S. Woll. A formal complaint was filed on September 10, 1970, charging Woll with solicitation of workmen compensation cases through the use of touters or "runners," particularly one David Wood.

Hearing was held before Wayne County Hearing Panel No. 2 on November 3, 1970. Mr. Wood never personally appeared before the hearing panel because of poor health. He testified by deposition and, by stipulation of the parties, his deposition included two statements he had previously given. In the first statement, given to an investigator of the State Bar on March 6, 1970, he stated that defendant had paid him money for steering business to defendant. On the basis of this statement, the request for investigation was filed. Mr. Wood stated to the State Bar investigator that he had taken approximately ten people to defendant's office for processing of workmen's compensation claims and had been paid $10

to $15 for each referral. The second statement was prepared by defendant and signed by Mr. Wood. At defendant's request, Mr. Wood went to defendant's office on April 17, 1970, and executed an affidavit in which he denied receiving any money for soliciting business for defendant.

In his deposition, taken October 22, 1970, Mr. Wood testified that he had taken several different people to Mr. Woll's office; that he (Wood) had borrowed money from Mr. Woll on several occasions and that the loans were paid from his (Wood's) workmen's compensation settlement check in April, 1968.

Defendant Woll was called as a witness pursuant to Rule 15.11 of the Procedure and Administrative Rules of the State Bar Grievance Board.[1] Mr. Woll testified that he had loaned Mr. Wood money on several occasions, all of which had been repaid out of the proceeds of Mr. Wood's workmen's compensation settlement. In the course of his examination, the following occurred:

"*Mr. Colombo* [*Member of Hearing Panel*]: And I want to direct a question to you in reference to Paragraph 4, Subparagraph A of that Complaint which reads as follows:

---

[1] Rule 15.11 provides in part:

"Respondent shall appear in person before the hearing panel at the time and place named by the hearing panel, and he shall be subject to cross-examination in like manner as an opposite party under MCLA § 600.2161."

MCLA 600.2161 provides:

"In any suit or proceeding in any court in this state, either party, if he shall call as a witness in his behalf, the opposite party, employee or agent of said opposite party, or any person who at the time of the happening of the transaction out of which such suit or proceeding grew, was an employee or agent of the opposite party, shall have the right to cross-examine such witness the same as if he were called by the opposite party; and the answers of such witness shall not interfere with the right of such party to introduce evidence upon any issue involved in such suit or proceeding, and the party so calling and examining such witness shall not be bound to accept such answers as true."

" 'That the charges of misconduct against said respondent are as follows: A, soliciting professional employment through touters, and in particular to one David Woods, to whom respondent between April of 1968 through June of 1969 paid money to Mr. Woods to bring in new clients who had Workmen's Compensation claims.'

Is that allegation true or false?

*"Mr. Woll:* I believe it's false, sir.

*"Mr. Colombo:* May we have a 'yes' or 'no'? Is it true or false?

*"Mr. Woll:* False.

*"Mr. Colombo:* In other words, under oath, you have never solicited—

*"Mr. Woll:* I have never—

*"Mr. Colombo:* Wait until I finish my question. Now, any person—I'm not limiting to Mr. Woods— any person, to solicit law cases for you.

"Do you understand my question?

*"Mr. Woll:* I do, sir.

*"Mr. Colombo:* What is your answer?

*"Mr. Woll:* I will not answer that question. I will take the Fifth Amendment.

*"Mr. Colombo:* That's all.

*"Mr. Maiullo* [*Member of Hearing Panel*]: Would this reporter please go back and read Mr. Colombo's last question.

"(Whereupon the reporter reads back the last question.)

*"Mr. Hyman* [*Defendant's attorney*]: May I confer with my client?   *   *   *   [Recess]

*"Mr. Colombo:* The charge says 'soliciting professional employment through touters.' I am directing this question now to him.

*"Mr. Woll:* No.

*"Mr. Colombo:* Your answer is no?

*"Mr. Woll:* My answer is no. Might I clarify—

*"Mr. Hyman:* No.

*"Mr. Colombo:* Was there any doubt in your mind when you answered the other question and decided to take the Fifth Amendment?

*"Mr. Woll:* Yes, there was.

*"Mr. Colombo:* What was the doubt?

*"Mr. Woll:* I wasn't sure what the question was.

*"Mr. Colombo:* The question was pretty clear."

In closing arguments, counsel for the State Bar argued as follows:

"The other damaging piece of evidence against Mr. Woll goes to the general question propounded him by Mr. Colombo as to whether or not he had at any time and from anyone solicited clients—employed people or solicited clients. I put it to you that the question was quite clear.

"Mr. Woll is a practitioner of some years; he knows as well as you gentlemen of the Panel know that if a question is unclear, that the witness has a perfect right to ask the examiner to rephrase the question. In this case Mr. Woll did not see fit to ask for such rephrasal but answered it categorically by taking what is known as the Fifth Amendment.

*"In this type of proceeding we can be confident that the taking of the Fifth Amendment at that time —even though it was subsequently retracted by Mr. Woll—and I will point out to you gentlemen that there is something to hide, there was something to hide; and that was the reason why the answer was so given.* [Emphasis added.]

"We have nothing here but testing credibility, actually, who is telling the truth. We have to add inferences.

"The inferences can be added by the taking of the Fifth as an indication in this case, even though subsequently denied—after, I might add, a recess at which time he had an opportunity to confer with counsel and think over the matter of the answer he gave in the heat of cross examination, where, as you gentlemen know, the truth usually comes out.

*"This is something that you must consider very seriously in reaching a result."* (Emphasis added.)

The hearing panel found Woll guilty and on February 10, 1971, filed its Order for Discipline, suspending him from the practice of law for three months and requiring him to pay $278.95 in costs.

On appeal to the full Grievance Board, counsel for the State Bar contended that it was proper to draw inferences of guilt from the fact that defendant availed himself of the right to avoid self-incrimination, thusly:

"Now, regardless of what my brother says, and I respect and admire him, but I think he is wrong in this instance, and in fact I am pretty sure he is wrong. There is an obligation on the part of an attorney to testify in proceedings of this kind. The rules specifically say that he may be called as an adverse witness, the same as any other adverse witness, and his testimony taken.

"Now, Spevack versus Kline [*sic*] [385 US 511; 87 S Ct 625; 17 L Ed 2d 562 (1967)] goes only to one thing, an attorney may refuse to answer because of the fifth amendment as jeopardizing his rights under the fifth amendment. But once that attorney takes the stand, he has waived his right to take the fifth amendment, particularly in a situation of this kind, where Mr. Woll had answered the question, I refuse to answer because of the fifth amendment, and then, after consultation with his attorney, then goes back and answers the question. That is a clear waiver of his rights.

"We have a right to take that testimony and we have a right to draw inferences from that testimony and from the fact of his previous testimony of his taking the fifth amendment.

"Now, I submit, if the members please—

"*The Chairman:* May I interrupt you, sir?

"What inference may you take from his taking the fifth amendment and then recanting and answering the question?

"What inference can the State Bar take?

"*Mr. Rosenzweig:* I think the State Bar can take the inference that Mr. Woll was getting cases from Mr. Wood and was paying money for cases, because the question was specifically asked not only about Mr. Wood but the specific question is—"

The State Bar Grievance Board affirmed Woll's conviction on June 18, 1971. He filed timely claim of appeal on June 30, 1971.[2]

The problem we are dealing with is one of first impression in this state. Counsel for the State Bar Grievance Board contend that the case of *State Bar of Michigan* v *Block*, 383 Mich 384 (1970), is controlling. We disagree. *Block* also involved the disbarment of an attorney from the practice of law. Block was called to testify at the disbarment hearing, pursuant to Rule 15. He objected to being called, but then answered all of the questions put to him and made no further objection. He contended on appeal that the procedure provided by Rule 15 violated his right against self-incrimination. Our Court held that Block was not coerced into answering the questions and, hence, his right against self-incrimination was not violated. Speaking for the Court, Justice BLACK stated (p 391):

"We respond directly to the issue stated. There is no such fact or inference [of coercion]. Mr. Block took the oath voluntarily and answered all questions freely."

Justice BLACK further stated (p 392):

---

[2] Rule 15.23 provides:
"Appeal to the Supreme Court. Any party aggrieved by a final order of discipline or of dismissal by the board on review shall have the right to appeal such final order to the Supreme Court."

"There simply was no threat by the grievance committee, or anyone else acting for the State Bar, of loss by Mr. Block of his license to practice. Nor was the testimony given by him incriminatory, as in *Garrity* [v *New Jersey,* 385 US 493; 87 S Ct 616; 17 L Ed 2d 562 (1967)]."

If Woll had contended in this Court, as his attorney did at the grievance hearing, that he should not have been required to answer any of the questions put to him, we would have the same situation our Court dealt with in *Block.* Mr. Woll, however, is not objecting to the provisions of Rule 15. Rather, he is objecting to the comments that were made before the Hearing Panel and the Grievance Board by counsel for the State Bar. Counsel for the State Bar contends it was proper to comment upon defendant's initial refusal to testify. Defendant contends it was not.

Although it is not necessary to observe all of the rules of criminal law and procedure in a disbarment proceeding,[3] nevertheless our Court has long recognized that a disbarment proceeding is quasi-criminal in character. As this Court stated in *Matter of Hamilton Baluss,* 28 Mich 507, 508 (1874):

"While not strictly a criminal prosecution, it is of that nature, and the punishment, in prohibiting the party following his ordinary occupation, would be severe and highly penal."

See, also, *In re Clink,* 117 Mich 619 (1898).

Thus, many of the safeguards afforded accused criminals contained in the United States Constitution have been made applicable to disbarment proceedings. In *Spevack* v *Klein,* 385 US 511; 87 S Ct

---

[3] For example, a lawyer does not have to be proven a criminal before he can be disbarred. *State Bar of Michigan* v *Block, supra,* p 392.

625; 17 L Ed 2d 574 (1967), the United States Supreme Court overruled *Cohen* v *Hurley,* 366 US 117; 81 S Ct 954; 6 L Ed 2d 156 (1961), which held that the privilege against self-incrimination does not apply in a disbarment proceeding.

In *Spevack,* the United States Supreme Court reversed a disbarment of a New York attorney who had failed to produce records demanded in a *subpoena duces tecum* and who had refused to testify at the judicial inquiry. The Court stated (p 514):

"And so the question emerges whether the principle of *Malloy* v. *Hogan* [378 US 1; 84 S Ct 1489; 12 L Ed 2d 653 (1964)] is inapplicable because petitioner is a member of the Bar. We conclude that *Cohen* v. *Hurley* [366 US 117; 81 S Ct 954; 6 L Ed 2d 156 (1961)] should be overruled, that the Self-Incrimination Clause of the Fifth Amendment has been absorbed in the Fourteenth, that it extends its protection to lawyers as well as to other individuals, and that it should not be watered down by imposing the dishonor of disbarment and the deprivation of a livelihood as a price for asserting it."

The Court further said in *Spevack* (p 516):

"We find no room in the privilege against self-incrimination for classifications of people so as to deny it to some and extend it to others. Lawyers are not excepted from the words 'No person . . . shall be compelled in any criminal case to be a witness against himself'; and we can imply no exception."

Thus, the privilege against self-incrimination granted by Const 1963, art 1, § 17, and the US Const, Am V, do apply to defendant Woll in this disbarment proceeding.

The questions of comment by the prosecutor or the judge on the failure of a defendant to testify

were answered by the United States Supreme Court in *Griffin* v *California,* 380 US 609; 85 S Ct 1229; 14 L Ed 2d 106 (1965). In that case petitioner had been convicted of murder. He had refused to take the stand at that segment of the trial concerned with his guilt or innocence. The trial judge, based on art 1, § 13, of the California Constitution, instructed the jury that it could draw inferences on the defendant's failure to testify concerning matters within his knowledge. If he failed to explain or deny facts within his knowledge, it could be taken as evidence that those facts were true. The prosecutor also commented on defendants' failure to testify and implied that this failure indicated the truth of the assertions of the prosecutor. The Court stated (pp 613–614):

"The question remains whether, statute or not, the comment rule, approved by California, violates the Fifth Amendment.

"We think it does. It is in substance a rule of evidence that allows the State the privilege of tendering to the jury for its consideration the failure of the accused to testify. No formal offer of proof is made as in other situations; but the prosecutor's comment and the court's acquiescence are the equivalent of an offer of evidence and its acceptance.

\* \* \*

"For comment on the refusal to testify is a remnant of the 'inquisitorial system of criminal justice,' *Murphy* v. *Waterfront Comm'n,* 378 U.S. 52, 55 [84 S Ct 1594; 12 L Ed 2d 678 (1964)], which the Fifth Amendment outlaws. It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly."

The Court continued (p 615):

"We said in *Malloy* v. *Hogan, supra,* [378 US 1; 84 S Ct 1489; 12 L Ed 2d 653 (1964)] p. 11, that 'the same standards must determine whether an accused's silence in either a federal or state proceeding is justified.' We take that in its literal sense and hold that the Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."

Thus, it is clear that a disbarment proceeding is a quasi-criminal proceeding (*Matter of Hamilton Baluss, supra*); that the privilege against self-incrimination does apply to such a proceeding (*Spevack* v *Klein, supra*); and that comments made to a fact-finding body by a prosecutor concerning an accused's silence, are prohibited by the self-incrimination clause of the US Const, Am V, and Const 1963, art 1, § 17.

Counsel for the State Bar contends that if error was committed, it was merely harmless error. *Chapman* v *California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967). However, as the United States Supreme Court held in *Chapman* (pp 23–24), the prosecution must demonstrate beyond a reasonable doubt that any error which occurred was harmless error. It has failed to meet its burden in this case. The evidence against defendant consisted of the statement given by one David Wood to the State Bar investigator. This statement was later repudiated in an affidavit prepared by Mr. Woll and signed by Mr. Wood and, also, by deposition given by Mr. Wood while under oath. The only other evidence was the inference that counsel for the State Bar asked the Hearing Panel and the Grievance Board to draw by defendant's silence. Counsel for the

State Bar vigorously advocated that the Hearing Panel and the Grievance Board draw an inference of defendant's guilt by his initial silence on a question propounded by Mr. Colombo. While, as counsel for the State Bar points out, the Hearing Panel is made up of lawyers who should not be swayed by emotional arguments, the full Grievance Board does consist of two laymen[4] who may not be familiar with the extent of the privilege against self-incrimination. Moreover, counsel for the State Bar did argue to the Hearing Panel that they should take defendant's failure to answer as evidence of his guilt, and he cannot now assert that because they were lawyers they must have known that he was making an improper argument and, thus, disregard it.

Counsel for the State Bar further contends that because defendant later answered the question put to him, he waived any privilege afforded him under the Fifth Amendment. However, defendant's waiver only went to the fact that he agreed to answer all questions put to him and it, therefore, cannot now be argued that those questions and his answers were improper. Defendant did not waive his Fifth Amendment rights by testifying under the provisions of Rule 15 and comments by counsel for the State Bar on his initial refusal to answer a specific question, based on the US Const, Am V, were im-

---

[4] Rule 15 of the "Supreme Court Rules Concerning The State Bar of Michigan," as amended March 1, 1970 (383 Mich xliv), reads in pertinent part as follows:

"The State Bar Grievance Board shall consist of,

"(1) 3 lawyers appointed by the Commissioners of the State Bar, for an initial term of 3 years;

"(2) 2 lawyers appointed by the Supreme Court, for an initial term of 2 years;

"(3) 2 laymen appointed by the Supreme Court, for an initial term of 1 year.

"Subsequent terms of all members shall be 3 years. Vacancies shall be filled by the appointing authority."

proper.   The comments made by counsel for the
State Bar violated defendant's constitutional rights
under Const 1963, art 1, § 17, and the US Const, Am
V, and we so hold.

The order of the Grievance Board is reversed.
However we do not remand for a further hearing,
the defendant having served the penalty of suspension under the Order for Discipline.   Costs of this
appeal to defendant.

T. M. Kavanagh, C. J., and Adams, T. E. Brennan, and T. G. Kavanagh, JJ., concurred with
Swainson, J.

Black and Williams, JJ., concurred in the result.