STATE of Oklahoma, ex rel. OKLA-
HOMA BAR ASSOCIATION,
Complainant,

v.

Duane LOBAUGH, Respondent.

S.C.B.D. No. 3461.

Supreme Court of Oklahoma.

Dec. 6, 1988.

Gloria Miller White, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Duane Lobaugh, Oklahoma City, pro se.

KAUGER, Justice.

We are presented with a question of first impression: whether the trial panel of the Professional Responsibility Commission may, in the absence of the lawyer who has been accused of violations of the Code of Professional Responsibility, conduct disciplinary proceedings and impose discipline when the lawyer appears before the proceedings are concluded and moves to reopen the hearing. We find that it may not. However, because the lawyer did not dispute that he failed to communicate with his client thereby neglecting the case, a public censure is warranted.

The Oklahoma Bar Association, (complainant), instituted disciplinary proceedings against the respondent, Duane Lobaugh, (respondent/lawyer), after receiving a written complaint from one of his clients. The complaint alleged that the lawyer co-

mingled funds, made misrepresentations to a client, neglected and inadequately prepared a legal matter, and failed to zealously represent his client all in violation of the Rules of Governing Disciplinary Proceedings, 5 O.S.1981 Ch. 1, App. 3, DR 1–102(A)(4), DR 6–101(A)(2), DR 6–102(A), DR 7–101(A)(1), (2), (3), and 5 O.S.Supp.1983 Ch. 1, App. 3, DR 9–102(A).[1]

## FACTS

In May, 1982, Freddy Greer, (client), paid the lawyer $250.00 to file a lawsuit against a local car dealer. According to the client, the lawyer, over the next five years, repeatedly misrepresented to the client and the client's family that a case had been filed and that a settlement offer had been received and rejected. However, the suit was never filed, and the statute of limitations was allowed to run.

The Bar mailed a letter to the lawyer on April 1, 1987, informing him that pursuant to Rule 5.2[2] he had twenty days to respond to the allegations. When no response was received, a certified letter was sent on April 21, 1987, giving the lawyer five days to respond. On April 27, 1987, the lawyer called the investigator for the bar. He told the investigator that he had not received the first letter, and that he could not adequately respond to the complaint because he could not find the file. On June 4, 1987, the lawyer wrote a letter to the Bar stating that he had been unable to find the file, but that he was attempting to resolve the complaint with the client.

The matter was first set for hearing on December 21, 1987, and subsequently rescheduled to January 7, 1988. It snowed on the 7th, and the case was continued until January 14, 1988. Because the lawyer had a conflicting court appearance on the 14th, he asked that the matter be continued. The hearing was set for January 25, 1988. After changing a tire in extremely cold weather, the lawyer was hospitalized with chest pain on January 14. On the 25th, the lawyer moved for a continuance because of his physical and mental inability either to proceed with the hearing or to defend himself. He alleged that this was so because he had been hospitalized until January 20 for chest pain of cardiac origin, high blood sugar, and high blood pressure. He stated that he had been unable to walk, and that at the time of the scheduled hearing, he had a sore throat, a nauseaous headache, and tightness in his chest; and

---

1. The disciplinary rules, 5 O.S.1981 Ch. 1, App. 3, DR 1–102(A)(4), DR 6–101(A)(2), DR 6–102(A), DR 7–101(A)(1), (2), (3) and 5 O.S.Supp. 1983 Ch. 1, App. 3, DR 9–102(A), provide in pertinent part:
   DR 1–102(A)(4):
   "(A) A lawyer shall not:
   (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."
   DR 6–101(A)(2):
   "(A) A lawyer shall not:
   (2) Handle a legal matter without preparation adequate in the circumstances."
   DR 6–102(A):
   "(A) A lawyer shall not attempt to exonerate himself from or limit his liability to his client for his personal malpractice."
   DR 7–101(A)(1), (2), (3):
   "(A) A lawyer shall not intentionally:
   "(1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.
   (2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2–110, DR 5–102, and DR 5–105.
   (3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7–102(B)."
   DR 9–102(A):
   "(A) All Funds of Clients paid to a lawyer or law firm, excluding advances for costs and expenses, shall be deposited in one or more identifiable bank or savings and loan association accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:".

2. The investigation procedures, 5 O.S.1981 Ch. 1, App. 1–A, Rule 5.2, provides in pertinent part:
   "... The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline...."

further, that because of his ill health, he had been unable to prepare for the hearing. The lawyer stated that at the time he entered the hospital his blood pressure was 245/145 mm. Hg., that his blood sugar was approximately 595 mg., and that his blood sugar was currently 200 mg.—still out of control. The lawyer also asserted that he did not receive notice of the January 25 hearing.

The presiding master acknowledged that the lawyer had recently been released from the hospital, that he had been advised by his doctor to avoid stressful situations for a few days, and that he was "not in totally good health even as we meet here today." The master also noted that an order had issued continuing the hearing. Two of the three member of the tribunal acknowledged receipt of the notice—one was not sure, but he knew to be at the meeting. After an off-the-record discussion, the tribunal members "reluctantly agreed" to grant the motion for continuance, orally reset the hearing on February 26, 1988, at 11:00 a.m., and advised the lawyer to obtain counsel. However, the continuance was conditioned upon the lawyer obtaining, prior to the hearing date, a report from the lawyer's doctor concerning his mental and physical fitness to practice law and a similar report from an examining physician chosen by the Bar. The lawyer's doctor's report confirmed the lawyer's hospital stay for high blood pressure and high blood sugar. The doctor selected by the Bar conducted a psychiatric evaluation of the lawyer and found nothing significantly wrong.

At 11:00 a.m. on February 26th, the Bar was present and announced ready. When the lawyer failed to appear, the members of the Trial Panel unanimously agreed to proceed with the hearing and in effect entered a default judgment. After the evidence was concluded, but before the trial panel rendered its decision, the lawyer appeared. He contended that he thought that the hearing was set for 1:00 p.m. instead of 11:00 a.m., and he asked that the proceedings be reopened. His application to reopen the proceedings was denied. Although no formal notice was sent, the transcript from the January 25, 1988, proceeding confirmed that the hearing had been set for 11:00 a.m.

The Trial Panel's findings of facts were that:

1. In May of 1982, Freddy Greer paid the lawyer $250.00 to file a lawsuit concerning an allegedly defective used car purchased by Greer from a dealer. The money was deposited in the lawyer's person checking account. The Bar claims that the payment was a retainer and should have been deposited in the lawyer's trust account.

2. The lawyer misrepresented to his client and others that the case had been filed and an offer of settlement received and rejected when, in fact, no case was ever filed, and the statute of limitations was allowed to run on the action.

3. The lawyer failed to cooperate with the Bar in its duty to investigate the grievance by failing to respond timely to its request for information.

4. During the investigation of the grievance, the lawyer reported that he could not locate his work file when, with minimal effort, Bar investigators and the lawyer discovered the file located with other of the lawyer's legal files.

5. The lawyer refunded the $250.00 fee after seeking a release from the client and withdrawal of the grievance in exchange for the refund.

The lawyer's position, based on his deposition testimony which was admitted into evidence pursuant to 12 O.S.1981 § 2801(4)(b)(1), the transcript of the proceedings, and as contained in the statement of facts in his brief is, as follows:

1. After Greer purchased a car with a defective speedometer, he hired the lawyer to do some research on potential lawsuit against a car dealer. After spending 10–15 hours of research he concluded that the lawsuit would not be worth the effort because Greer was over twenty-one, that he could see the paint peeling off the car, that the speedometer was not set back, and that it was broken. Greer had an opportunity to drive the car

and he could see that the speedometer was not working.

2. The lawyer had moved his office three times. His explanation for not responding to the first letter from the Bar was that a temporary employee must have placed it in the wrong file.

3. On July 22, 1987, the Bar sent two investigators to the lawyer's office to serve a subpoena to take his deposition. While there, peering through levelor blinds, the investigators observed what appeared to be the missing file in a storage room. When the lawyer examined it, he discovered that it was. (The lawyer contends that it would be virtually impossible without prior knowledge to see a file tab three or four feet away through levelor blinds. He believes that the file could be considered tainted evidence.)

4. There was an offer to settle the case, but Greer turned it down. (Greer's testimony was that the lawyer told him he had refused the offer.)

5. There was no fraud on the part of the car dealer either in misrepresenting the car or setting the speedometer back, the lawyer feared that the case would have been considered frivolous by the court, and that sanctions would have been imposed.

6. One of the investigators for the Bar advised the lawyer to contact Greer concerning his complaint. When he did so, Greer told the respondent that all he wanted was his money returned. Without getting into an argument concerning whether the fee had been earned, it was refunded. Greer executed a release and request for the Bar to dismiss the complaint. The lawyer was not aware that this action would be used against him.

7. Greer testified that: he did not believe that he needed to sign the release in order to get his money refunded; and that he told the lawyer ... "Whatever. I just want my money back and I'll go to another attorney."

In mitigation of discipline, the Trial Panel found:

1. Restitution had been made because the lawyer returned the $250.00 to Greer. However, the money was not returned until after the Bar had investigated Greer's grievance.

2. The complaint was confined to a single instance of representation in a matter where the likelihood of success was questionable.

3. The lawyer had never been disciplined in any other matter.

4. The respondent has been a lawyer in good standing with the Bar Association in excess of thirty years.

The Trial Panel found that the evidence did not support a finding of co-mingling of funds because it could not determine whether the $250.00 payment from the client had been earned or had been intended as a retainer. It also found that there was clear and convincing evidence of misrepresentation, less than zealous representation, inadequate preparation, neglect of a legal matter, and an attempt to limit liability for malpractice. The Trial Panel recommended that the lawyer be suspended for one year with the effective date of the suspension to run from the hearing on February 26, 1988.

BEFORE A LAWYER CAN BE DISBARRED OR SUSPENDED FROM THE PRACTICE OF LAW, THE LAWYER HAS A RIGHT TO AN OPPORTUNITY TO BE HEARD.

Lawyers are admitted to the bar for something more than private gain. They become officers of the Court and, like the Court itself, instruments to advance the ends of justice. The power of discipline is necessary for the protection of the public in order to strip lawyer of the implied representation by courts that the lawyer who is allowed to hold himself/herself out to practice before them is in good standing to do so.[3] A license to practice law is acquired by order of this Court following graduation from an accredited law school and an examination of the candidate's moral and intel-

---

3. *Theard v. United States,* 354 U.S. 278, 281, 77   S.Ct. 1274, 1 L.Ed.2d 1342, 1345 (1957).

lectual qualifications.[4] A license to practice law is a privilege burdened with conditions.[5] However, it is neither a matter of grace and favor nor a mere indulgence, but rather a right which cannot be capriciously revoked at the pleasure of the Court. As long as a lawyer complies with the Code of Professional Responsibility, the privilege remains intact.[6]

Here, we have a form of default judgment. The Bar Association appeared and presented its evidence against the lawyer. The Trial Panel made its decision without permitting the lawyer to present his case or to confront the witnesses against him because he did not appear at the 11:00 a.m. hearing. He did appear at 1:00 p.m., and he asked to be allowed to be heard. In his brief, the lawyer asserts that he moved, in effect, to reopen the proceedings by asking the panel if he "were to be denied an opportunity to speak."[7] The Trial Panel denied his request. Apparently, because of his illness, the lawyer had written the wrong time at the January 25th hearing.

The lawyer, still recovering from extremely high blood pressure and high blood sugar, was weak and somewhat disoriented. No written notice of the hearing was given, and confusion over the time of a hearing is understandable in these circumstances.

This is a novel question of law insofar as disciplinary proceedings are concerned. However, these hearings are generally governed by the Rules of Civil Procedure.[8] In civil matters, we have recognized the broad discretion vested in a trial judge to vacate default judgments, and we have emphasized that motions to vacate should be granted where justice would be served by permitting a litigant to have his/her day in court. This Court has on many occasions been more impressed with the need to grant relief to a defaulting litigant than the lower court believed the party deserved.[9]

Disciplinary and disbarment proceedings are very serious business and ample opportunity must be afforded to show cause why an accused practitioner should not be disbarred.[10] Disbarment, designed to protect

---

**4.** See 5 O.S.1981 Ch. 1, App. 5, Rule 4.

**5.** *Theard v. United States,* see note 3, supra.

**6.** *Willner v. Comm. on Character & Fitness,* 373 U.S. 96, 102, 83 S.Ct. 1175, 1179, 10 L.Ed.2d 224, 229, 2 A.L.R.3d 1254, 1259 (1963); *Jaskiewicz v. Mossinghoff,* 802 F.2d 532, 534 (D.C.Cir.1986); *Charlton v. F.T.C.,* 543 F.2d 903, 906 (D.C.Cir. 1976); *Kivitz v. Sec. & Exch. Comm'n,* 475 F.2d 956, 962 (D.C.Cir.1973); *Laughlin v. Wheat,* 95 F.2d 101–02 (D.C.Cir.1937).

**7.** The right to be heard is mandated by the United States Constitution and the Oklahoma Constitution. Even if the lawyer failed to adequately present the denial of due process (and we think he did not) where, as here, the record reveals that the trial panel failed to recognize the lawyer's right to be heard, this plain error requires review by this court to remedy a manifest miscarriage of justice. *Local Lodge 1297 v. Allen,* 22 Ohio St.3d 228, 490 N.E.2d 865, 867 (1986). Even if this were not the case the Court is required under 12 O.S.1981 § 2201(A) to take judicial notice of this fundamental right.
"Judicial notice shall be taken by the court of the common law, constitutions and public statutes in force in every state, territory and jurisdiction of the United States."
See also, *Pettit v. Am. Nat'l Bank,* 649 P.2d 525, 529 (Okla.1982).

**8.** Title 12 O.S.1981 § 2611(C) provides in pertinent part:

"C. Cross-examination shall be limited to the subject matter of the direct examination and matters affecting the credibility of the witness ..."
Title 5 O.S. Ch. 1, App. 1–A, Rule 6.12(a) provides:
"(a) So far as practicable, the disciplinary proceedings and the reception of evidence shall be governed generally by the rules in civil proceedings, except as otherwise herein provided; the respondent shall be entitled to be represented by counsel."

**9.** *Tedford v. Divine,* 734 P.2d 283, 285 (Okla. 1987); *American Bank of Commerce v. Chavis,* 651 P.2d 1321, 1323 (Okla.1982); *Crawford v. Gipson,* 642 P.2d 248, 251 (Okla.1982); *Burroughs v. Bob Martin Corp.,* 536 P.2d 339, 341 (Okla.1975); *Hamburger v. Fry,* 338 P.2d 1088, 1091 (Okla.1958); *Haskell v. Cutler,* 188 Okla. 239, 108 P.2d 146, 148 (1940); *First Nat'l Bank v. Kerr,* 165 Okla. 16, 24 P.2d 985, 987 (1933); *Shuler v. Viger,* 103 Okla. 129, 229 P. 280, 282 (1924).

Title 12 O.S.1981 § 1031 sets forth the times a judgment may be vacated. It provides in pertinent part:
"... Seventh. For unavoidable casualty or misfortune, preventing the party from prosecuting or defending...."

**10.** *Theard v. United States,* see note 3, supra.

the public, is a punishment of penalty imposed on the lawyer.[11] It is the "law of the land" that no person's life, liberty or property be forfeited as a punishment in the absence of due process.[12] Because disciplinary proceeding partake of both civil and criminal elements, this Court has considered them to be special in nature and *sui generis.*[13] However, many jurisdictions hold that disciplinary proceedings because of their adversarial nature, are quasi-criminal, and have applied the full panoply of constitutional safeguards afforded accused criminals to lawyers faced with disciplinary proceedings.[14] A leading principle of criminal procedure is that after the indictment is found, nothing shall be done in the absence of the accused.[15]

Regardless of whether courts considering the issue have held the proceeding to be *sui generis* or quasi-criminal in nature, they are in complete agreement that due process must be afforded because of the possible punishment and penalties imposed. Due process in disciplinary proceedings contemplates a fair and open hearing before a trial panel with notice and an opportunity to present evidence and argument, representation by counsel, if desired, compulsory process for obtaining favorable witnesses, information concerning the claims of the opposing party, reasonable opportunity to be heard, and the right to confront the unfavorable witnesses.[16] (This does not mean that a lawyer may thwart discipline by wilfully failing to attend a disciplinary hearing.)

The constitutional mandate of due process is codified in the Code of Civil Procedure, The Evidence Code, and by incorporation, in the Disciplinary Rules.[17] This law of natural justice must be followed equally when proceedings are taken to deprive a lawyer of the right to practice law, as when they are taken to reach real or personal property.[18] While we must zealously promote purification of the bar, we must not forget that lawyers are also entitled to due process during the course of disciplinary proceedings.[19] Had this been a purely civil proceeding, the default judgment would be set aside. Had it been a quasi-criminal proceeding, the proceedings would be tainted by the absence of the accused.

**11.** *In re Ruffalo,* 390 U.S. 544, 550, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117, 122 (1968), reh'g denied 391 U.S. 961, 88 S.Ct. 1833, 20 L.Ed.2d 874 (1968); *Spevack v. Klein,* 385 U.S. 511, 515, 87 S.Ct. 625, 627, 17 L.Ed.2d 547, 577 (1967); *Ex parte Garland,* 71 U.S. (4 Wall.) 333, 380, 18 L.Ed. 366, 369 (1865).

**12.** *In re Oliver,* 333 U.S. 257, 278, 68 S.Ct. 499, 510, 92 L.Ed. 682, 697 (1948); *Chambers v. Florida,* 309 U.S. 227, 236–37, 60 S.Ct. 472, 477, 84 L.Ed. 716, 721–22 (1940).

**13.** *State ex rel. Okla. Bar Ass'n v. Bradley,* 746 P.2d 1130, 1134 (Okla.1987); *Matter of Evinger,* 604 P.2d 844–45 (Okla.1979).

**14.** *Charlton v. F.T.C.,* see note 6, supra; *In re Freid,* 388 Mich. 711, 202 N.W.2d 692–93 (1972); *In re Woll,* 387 Mich. 154, 194 N.W.2d 835, 838 (1972).

**15.** *Brinlee v. Crisp,* 608 F.2d 839, 848 (10th Cir. 1979), cert. denied 444 U.S. 1047, 100 S.Ct. 737, 62 L.Ed.2d 733 (1980); *Lewis v. United States,* 146 U.S. 370, 372, 13 S.Ct. 136–37, 36 L.Ed. 1011–12 (1892).

**16.** *Missouri v. North,* 271 U.S. 40, 42, 46 S.Ct. 384–85, 70 L.Ed. 818, 821 (1926); *Eash v. Riggins Trucking Inc.,* 757 F.2d 557, 570, 77 A.L.R. Fed. 751, 772 (3rd Cir.1985); *Burkett v. Chan-* dler, 505 F.2d 217, 222 (10th Cir.1974), cert. denied, 423 U.S. 876, 96 S.Ct. 149, 46 L.Ed.2d 110 (1975); *Jackson v. Indep. School Dist. No. 16,* 648 P.2d 26, 30 (Okla.1982); *Waltz v. Herlihy,* 682 F.Supp. 501, 509 (S.D.Ala.1988); *Ex Parte Burton,* 237 Ark. 441, 373 S.W.2d 409, 411 (Ark.1963); *In re Stern,* 299 Mass. 107, 12 N.E.2d 100–01 (1937); Annot., Suspension or Revocation of Medical or Legal Professional License as Violating Due Process—Federal Cases, 98 L.Ed. 851 (1953).

**17.** Title 12 O.S.1981 § 2611(C) provides in pertinent part:
"C. Cross-examination shall be limited to the subject matter of the direct examination and matters affecting the credibility of the witness ..."
Title 5 O.S. Ch. 1, App. 1–A, Rule 6.12(a) provides:
"(a) So far as practicable, the disciplinary proceedings and the reception of evidence shall be governed generally by the rules in civil proceedings, except as otherwise herein provided; the respondent shall be entitled to be represented by counsel."

**18.** *Massengale v. United States,* 278 F.2d 344 (6th Cir.1960); *Laughlin v. Wheat,* see note 6, supra.

**19.** See, e.g., *Spevack v. Klein,* see note 11, supra.

812

Were this an ordinary civil proceeding, we would remand for further proceedings. In its initial complaint the Bar asked that the lawyer be disbarred. On appeal, the Bar has asked that the lawyer be suspended for a period of one year to run from the time of this Court's order, and the lawyer has requested either a private reprimand, or in the alternative that the suspension run from the date of the hearing, February 26, 1988. A remand is not likely to change the fact that: the evidence does not support a finding of co-mingling of funds; the lawsuit had a low expectation of success, the statute of limitations had run, and the lawyer neglected the file and misrepresented the fact that he had filed a lawsuit. Lawyers are not perfect—even the most respected and skilled practitioner could inadvertently let a statute of limitations run. Under the mitigating factors listed by the trial panel, were this the only complaint lodged against the lawyer, no discipline should be imposed. However, the lawyer does not contest the fact that he neglected the case, and made misrepresentations to his client—this cannot go unpunished. It is for this reason that we elect not to remand the cause for further proceedings, but to, by the publication of this opinion, publicly censure the respondent.[20]

IT IS THE ORDER OF THIS COURT THAT THE RESPONDENT, DUANE LOBAUGH, BE HEREBY PUBLICLY CENSURED FOR PROFESSIONAL MISCONDUCT.

DOOLIN, C.J., and HODGES, ALMA WILSON and SUMMERS, JJ., concur.

HARGRAVE, V.C.J., concurs in result.

LAVENDER, SIMMS and OPALA, JJ., dissent.

SIMMS, Justice, dissenting:

I must respectfully dissent. The issue which the majority finds controlling was not presented to the trial panel, nor was it raised by the Respondent to this Court. Here he does not challenge the procedure afforded him, but complains only that the discipline imposed is too severe. Assuming, for the sake of argument, that a procedural defect of constitutional dimension is present in the facts of this case, the Respondent has waived any and all objections to it. Constitutional rights, as other rights, are personal and may be waived. See, e.g., *D.H. Overmyer Co., Inc. of Ohio v. Frick Co.*, 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972); *Pierce Oil Corp. v. Phoenix Refining Co.*, 259 U.S. 125, 42 S.Ct. 440, 66 L.Ed. 855 (1922).

It is axiomatic that issues are not properly before us for consideration when they are not raised at trial and also not raised here. See, e.g., *McGlumphy v. Jetero Const. Co., Inc.*, Okl., 593 P.2d 76 (1979); *Peters v. Golden Oil Co.*, Okl., 600 P.2d 330 (1979). The majority's reliance on *Pettit v. American Nat. Bank of Austin*, Okl., 649 P.2d 525 (1982) is misplaced as in that case claims of denial of due process based on a lack of minimum contacts were not made to the trial court; but were raised for the first time on appeal. Here, however, the argument has never been made.

Additionally, I believe the majority is committing the very same purported constitutional error of which it adjudges the trial panel guilty: depriving Respondent of an opportunity to be heard and confront witnesses against him. By refusing to remand this matter so that Respondent can now have the hearing the majority finds he was entitled to, the majority is compounding his so-called constitutional deprivations.

**20.** Title 5 O.S.1981 Ch. 1, App. 1–A, Rule 1.7 provides:

"Discipline by the Court shall be disbarment, suspension of a respondent from the practice of law for a definite term or until the further order of the Court, public censure or private reprimand; the Court may, in its discretion, suspend or defer the imposition of discipline subject to the fulfillment of specified conditions by the respondent. This does not preclude the Professional Responsibility Commission from administering a private reprimand to a respondent as provided elsewhere. In fashioning the degree of discipline to be imposed for misconduct, the Professional Responsibility Tribunal and the Court shall consider prior misconduct where the facts are charged in the complaint and proved and the accused has been afforded an opportunity to rebut such charges."

I would suspend Respondent for one year as recommended by the trial panel, to begin one year from the date of this order as urged by the Bar Association.

I am authorized to state that Justice LAVENDER joins with the views expressed herein.

I am further authorized to state that Justice OPALA joins in the views expressed herein insofar as Respondent has waived his constitutional right.

OPALA, Justice, dissenting.

In this bar prosecution for professional misconduct, the court undertakes a *sua sponte* assessment of the disciplinary process conducted against the respondent-lawyer and concludes that it falls short of meeting the minimum standards of fairness.

The court's opinion, which resolves fundamental-law issues that are unnecessary for the disposition of this case, offends two of the cardinal rules governing constitutional adjudication: never anticipate a constitutional question in advance of the necessity of deciding it and never formulate a norm of constitutional law broader than is required by the precise facts to which it is to be applied.[1]

I must hence recede from today's pronouncement of purely gratuitous constitutional jurisprudence whose norms, even if correct *in abstracto*, are grossly ill-fitted for application to this proceeding's posture.

*All* of the procedural defects discussed in the court's opinion went unchallenged, both below and here.[2] None has been revealed as having prejudiced the truth-finding process before the Professional Responsibility Tribunal's panel. Forgotten or abandoned by the court is the time-honored principle of harmless error that would withhold vitiating consequences from a constitutional violation which did not deprive one of a fair hearing.[3]

While a Professional Responsibility Tribunal's findings are subject to *de novo* review,[4] the process before it is not free from the strictures that generally govern advocacy in the adversary common-law tradition of forensic combat. Fundamental fairness in litigation process cannot be afforded to the parties opponent except within a framework of orderly procedure. No area of the law may lay claim to exemption from the range of its cardinal requirements—not even bar discipline.[5] *Because the respondent neither preserved nor tendered any of the issues reached for resolution by today's pronouncement, the court's response to his plea is purely advisory and academic.*

On *de novo* review of the entire record, I would adopt, as I believe I must, the *unassailed factual findings* of the Professional Responsibility Tribunal's panel and would conclude that the respondent's professional misconduct, followed by his prolonged recalcitrance and dilatory tactics, warrants a suspension from legal practice for not less than six months, which period should begin from the effective date of the court's decision.

1. *In re Snyder,* 472 U.S. 634, 105 S.Ct. 2874, 86 L.Ed.2d 504 [1985] and *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 [1986].

2. Although there is scant reference in respondent's brief to the Professional Responsibility Tribunal panel's refusal to let him "reopen" and to his lost "opportunity to speak," his plea to this court is not for corrective relief from the Bar's tainted process, but rather for reduction of disciplinary sanction to a private reprimand.

3. *United States v. Bagley,* 473 U.S. 667, 677, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 [1985].

4. *State, ex rel., Okl. Bar Ass'n v. Raskin,* Okl., 642 P.2d 262, 266 [1982].

5. *Pryse Monument Co. v. District Court, etc.,* Okl., 595 P.2d 435, 438 [1979].