Cite as 2023 Ark. 86

# SUPREME COURT OF ARKANSAS

No. CV-23-151

|  |  |
|---|---|
| | **Opinion Delivered:** May 18, 2023 |
| WILLIAM ASA HUTCHINSON III<br>PETITIONER | PETITION FOR WRIT OF<br>CERTIORARI |
| V. | |
| ARKANSAS SUPREME COURT<br>COMMITTEE ON PROFESSIONAL<br>CONDUCT, PANEL A<br>RESPONDENT | |
| LISA BALLARD, EXECUTIVE<br>DIRECTOR, SUPREME COURT<br>OFFICE OF PROFESSIONAL<br>CONDUCT<br>RESPONDENT | <u>WRIT GRANTED</u>. |

**PER CURIAM**

Today, we grant the petitioner relief on his writ of certiorari after a de novo review of the Arkansas Supreme Court Committee on Professional Conduct, Panel A's decision to suspend the petitioner's law license on an interim basis. Effective today, we order reinstatement of petitioner's law license. While the Committee has the power to summarily suspend law licenses, it should exercise such power cautiously. Suspension should occur primarily only after notice and a hearing. This procedure will allow more uniformity in application.

Petitioner was arrested late Friday evening on January 13, 2023. On January 17, the following Tuesday, the Office of Professional Conduct petitioned for his suspension. The Committee suspended him on January 20. Following the petitioner's interim suspension, he

asked this court for emergency relief. We granted expedited consideration and remanded to the Committee to enter a new order analyzing the *Tapp* factors. *See Tapp v. Ligon*, 2013 Ark. 259, 428 S.W.3d 492. This is consistent with our past treatment of these cases. *See Bloodman v. Ligon*, 2016 Ark. 309. The Committee filed its amended order on March 30.

Upon review, this court may take any action it deems appropriate and grant any relief. Ark. Sup. Ct. P. Regulating Prof'l Conduct § 16(E). The court has all options before it. *Id.* Having undertaken that review, we reinstate petitioner's law license.

Several reasons justify our lifting the interim suspension. We have grave concerns about uniformity of treatment. Compare this case with just one recent example. Another lawyer, Everett Martindale, pleaded guilty to conspiracy to commit mail fraud in the amount of more than $3.5 million.[1] He admitted using his trust-fund account and making false claims involving clients. He was indicted and charged in 2019. Yet, his license was not suspended until December 1, 2022, months after his guilty plea.

Most importantly, this court prefers that the Committee and the Director provide an attorney with notice and a hearing before issuing any interim suspension. We recognize the current rules permitted the Committee's action here. Ark. Sup. Ct. P. Regulating Prof'l Conduct § 16(A). And *ex parte* interim suspensions may be justified in other cases, particularly when the conduct arises from an attorney's practice of law. But here, this was a rapid summary suspension for conduct unrelated to petitioner's practice as a lawyer. "A lawyer's right to practice his profession is a valuable privilege, conferred in the first instance by this court and

---

[1]The relevant facts are contained in Martindale's petition for voluntary surrender. *See In re Martindale*, No. D-22-611 (Ark. Sept. 30, 2022).

not to be taken from him without notice and a hearing as provided by law." *Ex parte Burton*, 237 Ark. 441, 445, 373 S.W.2d 409, 411 (1963).

In today's world of instant communication and Zoom hearings, minimal notice and an opportunity to be heard imposes no real burdens. And this court and its committees must lead by example by having rules that provide ample procedural due process protections. The dissent cites multiple examples of recent interim suspensions without notice and hearings, which strengthens our resolve and point. This needs to end. This petitioner just happened to bring a writ seeking relief that brought the issue to the Court's full attention.

But to be clear: this court does not condone petitioner's alleged violation of the law; nor do we condone his past behavior that has subjected him to Committee discipline. We focus instead on the lack of uniform treatment and due process. The Committee may proceed, but we lift the interim suspension.

For the above reasons, we grant the writ, lift the suspension, and direct the Committee to revisit our rules and submit proposed revisions to this court that provide more due process protections.

BAKER, HUDSON, and WYNNE, JJ., dissent.

**COURTNEY RAE HUDSON, Justice, dissenting.** Late at night with bloodshot eyes and smelling of intoxicants, the driver of a Maserati blew through the streets of Bentonville at seventy-one miles an hour with a bag of cocaine, a Glock 9mm handgun, and a female passenger. After the Maserati sped past the Benton County Sheriff's Office, Deputy Sheriff Hunter Volner activated his cruiser's siren and blue lights to initiate a traffic stop where the driver, attorney William Asa Hutchinson III, refused to submit to chemical testing. The deputy's body camera captured the forty-five-minute traffic stop.

3

Notably, this is not Hutchinson's first encounter of its kind. In fact, it's not even the second, third, or fourth incident of similar misconduct. This is his fifth such soiree with law enforcement over seven years' time. Hutchinson's pattern of misconduct illustrates his flagrant disregard for the law and for his status as an officer of the court. Enough is enough.

The practice of law is not a right but a privilege. *Donovan v. Supreme Court Comm. on Prof'l Conduct*, 375 Ark. 350, 290 S.W.3d 599 (2009). As such, the protections afforded to a law license under the Due Process Clause "are only subject to the very lowest of review" by this court. *Id*. at 355, 290 S.W.3d at 603 (citing *Cambiano v. Neal*, 342 Ark. 691, 35 S.W.3d 792 (2000)). We have previously rejected the argument that our rules authorizing an interim suspension violate an attorney's procedural due-process rights. *See Bloodman v. Ligon*, CV-16-434 (Ark. Oct. 27, 2016) (denying petition for writs of certiorari and mandamus raising due-process claims), *cert. denied*, 137 S. Ct. 2250 (June 12, 2017) (mem.).

In practice, the decision to move forward with an interim suspension turns on the strength of the evidence of misconduct and whether the Office of Professional Conduct ("OPC") has access to it. Here, the OPC was provided a forty-five-minute video of the traffic stop generated by the Benton County Sheriff's Office through Deputy Volner. Rarely is an attorney's misconduct caught on video and made available for the OPC's review. In this instance, it was. In fact, the whole world had access to the video within days of the arrest due to its online presence. Conversely, on many occasions, attorney misconduct is ferreted out by federal investigative authorities with resources more vast than our OPC's. In those cases, federal agencies are often unwilling to share evidence gathered with any entity outside of its agency, including the OPC. One such example is the matter involving Everett Martindale. There, the U.S. Attorney's Office did not share any evidence of Martindale's misconduct until he entered

a guilty plea. As the OPC did not have access to any credible evidence of Martindale's misconduct, it did not initiate interim suspension. However, when Martindale entered his plea, he agreed to voluntarily surrender his license. *See In re Martindale*, No. D-22-611 (Ark. Dec. 1, 2022). By sharp contrast, in the Hutchinson matter, both the OPC and the Committee on Professional Conduct ("Committee") viewed the video, along with the deputy's written affidavit and description of the traffic stop, which provided ample credible evidence of attorney misconduct.

Furthermore, it is clear that the Committee was persuaded by Hutchinson's lengthy history of substance-abuse-related misconduct. The Committee specifically found,

> An attorney who has repeatedly violated the law, who consistently is charged with criminal offenses, including felony offenses involving illegal drugs and a firearm, and who by virtue of this conduct exhibits a dependence on or disregard for the risks of using drugs and/or alcohol, lacks fitness to practice law. There are obvious risks associated with an attorney who is addicted to alcohol or controlled substances, including risks regarding the entrustment of money, meeting critical deadlines, acting in the best interest of clients and generally exercising good judgment.

Although no nexus between the specific misconduct of the attorney and the practice of law is necessary for an interim suspension, the Committee has provided multiple nexuses here.

By granting Hutchinson extraordinary relief and reinstating his law license, the court has completely disregarded a unanimous decision by a committee of attorneys and laypeople that was based on substantial proof of a pattern of criminal behavior by Hutchinson. As a majority of this court freely admits, the panel's action was also fully authorized by and in compliance with our rules. Section 16 of the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law was adopted in its current form by this court in 2002, and it has not materially changed since that time.

5

Section 16(A)(3) of the Procedures provides that "the Committee may impose an interim suspension upon presentation of a verified petition by the Executive Director containing sufficient evidence to demonstrate that the attorney poses a substantial threat of serious harm to the public or to the lawyer's clients." This is precisely what occurred in this case. The verified petition alleged that Hutchinson had been arrested on January 13, 2023, in connection with multiple criminal charges, including felony possession of a controlled substance, driving while intoxicated–second offense, and refusal to submit to a chemical test. In addition, the petition listed his history of arrests, charges, and convictions, including a driving-while-intoxicated conviction in 2018 and a plea of guilty in 2016 to felony possession of a controlled substance in Alabama.

Hutchinson does not dispute that he has a history of arrests and convictions related to alcohol and controlled substances or that he has been formally charged with the new offenses. He instead argues that an interim suspension of his license was not justified because this conduct is "incidental" to the practice of law and does not rise to the level of a substantial risk of serious harm to the public.

I disagree. The Committee concluded that Hutchinson "poses a substantial threat of serious harm to the public and his clients, as a result of both his conduct on January 13, 2023, and his pattern of frequent, consistent conduct for years leading up to January 13, 2023." Indeed, it is hard to fathom how a pattern of alcohol and illegal-substance abuse and disdain for abiding by the law does not constitute a substantial risk of serious harm. The Preamble to the Arkansas Rules of Professional Conduct explains that "[a] lawyer's conduct should conform to the requirements of the law, both in professional service to the clients *and in the lawyer's business and personal affairs.*" (Emphasis added). Further, "[a] lawyer owes a solemn duty to uphold the

integrity and honor of his profession; to encourage respect for the law and for the courts; to act as a member of a learned profession; to conduct affairs so as to reflect credit on the legal profession; and to inspire the confidence, respect and trust of clients and the public." *Id.* These words must have meaning, and yet, the court's decision today throws cold water on them.

Section 16(A)(3) does not require that the lawyer's misconduct be directly related to the practice of law to warrant an interim suspension, and this is consistent with disciplinary rules in other states. The majority may lament the lack of such a requirement; however, to allege that the Committee misapplied it here is untenable. In fact, the decision of the panel in this case is consistent with other recent interim suspensions, which involved misconduct both related and unrelated to the practice of law. *See, e.g., In re Thomas David Carruth*, CPC–2023–002 (Ark. Sup. Ct. Comm. Prof'l Conduct Jan. 9, 2023) (interim suspension imposed after Jan. 5, 2023 arrest on criminal charges in connection with solicitation of a woman for sex in exchange for assistance with her boyfriend's criminal case); *In re Joshua Garrett Nobles*, CPC–2022–023 (Ark. Sup. Ct. Comm. Prof'l Conduct July 15, 2022) (interim suspension following failure to appear on multiple charges); *In re Bryan Donaldson*, CPC–2021–033 (Ark. Sup. Ct. Comm. Prof'l Conduct Nov. 17, 2021) (interim suspension following charges of rape and human trafficking); *In re Daniel Arthur Stewart*, CPC–2021–034 (interim suspension imposed following charge of conspiracy to commit rape) (Ark. Sup. Ct. Comm. Prof'l Conduct Nov. 12, 2021); *In re Christopher Hart*, CPC–2017–022 (Ark. Sup. Ct. Comm. Prof'l Conduct Aug. 25, 2017) (interim suspension imposed following felony drug and weapon charges). Thus, the court's concern with uniformity of treatment actually demands the interim suspension in the case before us.

As directed by this court, the Committee thoroughly discussed in its amended order each of the factors to be utilized when considering a petition for writ of certiorari to vacate an

interim suspension of a law license: (1) whether the public will suffer irreparable harm unless the order of interim suspension issues; (2) whether the threatened injury to the public outweighs whatever damage the proposed order may cause the attorney temporarily suspended from the practice of law; (3) whether the proposed order, if issued, would be adverse to the public interest; and (4) whether there is a substantial likelihood, based on all of the available evidence, that a significant sanction will be imposed on the attorney at the conclusion of any pending disciplinary proceedings. *Tapp v. Ligon*, 2013 Ark. 259, 428 S.W.3d 492. Again, the men and women on the Committee unanimously found that each of these factors weighed in favor of imposing the interim suspension, and after a de novo review, I agree.

Moving forward, I believe that we should amend our rules to provide for some type of notice prior to the imposition of an interim suspension. The American Bar Association's Model Rules for Lawyer Disciplinary Enforcement include such a provision in Rule 20, which states that the disciplinary counsel shall, contemporaneously with a proposed order for interim suspension, "make a reasonable attempt to provide the lawyer with notice," including notice by telephone. Model R. Law. Disc. Enf't 20(A)(ii) (Am. Bar Ass'n 2002). I note that Arkansas is not alone in declining to require a hearing prior to an interim suspension, as the majority of states do not impose this requirement. *See, e.g.*, Ha. Sup. Ct. R. 2.23; Ill. Sup. Ct. R. 774; R. Governing Mo. Bar & Jud. 5.24; S.C. App. Ct. R. 413, Law. Disc. Enf't R. 17; Wyo. R. Disc. P. 17. American Bar Association Model Rule 20 also does not require a formal hearing prior to an interim suspension. *See* Model R. Law. Disc. Enf't 20(B). Some states have adopted workable models that this court could choose to incorporate in a future revision of the rules. For example, Rule 20 of the Alabama Rules of Disciplinary Procedure states that the Disciplinary Commission may conduct a preliminary hearing to determine whether there is probable cause

to support the need for an interim suspension. *See also* Ariz. Sup. Ct. R. 61 (permitting the disciplinary judge to order an evidentiary hearing after the attorney's response, if any, is filed); Utah Sup. Ct. R. Prof'l Prac. 11-563 (providing for a hearing within fourteen days of notice). However, while we should always strive to refine and improve this court's disciplinary procedures, this does not change the fact that the Committee's actions in the case at bar were entirely authorized by the rules that are currently in place. Accordingly, I would deny Hutchinson's petition for writ of certiorari.

BAKER and WYNNE, JJ., agree.

*Cullen & Co., PLLC*, by: *Tim Cullen*, for petitioner.

*Lisa C. Ballard*, Executive Dir., Office of Professional Conduct; and *Cameron Thomas Bowden*, Staff Att'y, Office of Professional Conduct, for respondents.

9