**Jimmy R. BURROUGHS, Appellant,**

v.

**BOB MARTIN CORPORATION and Rent It Company, Inc., Appellees.**

**No. 47160.**

Supreme Court of Oklahoma.

June 3, 1975.

**340**

Jake Hunt, Jack S. Dawson, D. L. Cooley, III, Oklahoma City, for appellant.

Walter D. Hanson, of Hanson, Peterson & Tompkins, Inc., Oklahoma City, for appellee, Bob Martin Corp.

Robert P. Hall, of Cassil, Jackson & Hall, Oklahoma City, for appellee, Rent It Co., Inc.

DAVISON, Justice:

Jimmy R. Burroughs (Appellant) appeals from a judgment vacating default judgments rendered for him for damages because of personal injuries and against Bob Martin Corporation (Martin) and Rent It Company, Inc., (Rent)

On March 9, 1973, Appellant filed suit for damages for personal injuries against Martin, Rent, and the Black and Decker Manufacturing Company. Black and Decker is not involved in this appeal. Appellant's petition alleged Black and Decker manufactured an electrically operated tool, known as an electric screw-gun; that the screw-gun was shipped to Martin and Rent and that they sold it to a concern for which Appellant worked; and that while Appellant was using the screw-gun, he received an electric shock and fell from a scaffold and was injured. Summons was served upon Martin and Rent, but they made no appearance, filed no pleading, and were in default. On August 28, 1973, default judgment was rendered against Martin and Rent, and each of them, for $219,000.00.

Martin and Rent, on October 11, 1973, and November 1, 1973, respectively, moved and petitioned the court to vacate the default judgments, on the ground, inter alia, that unavoidable casualty and misfortune prevented them from defending the action, and that they had a good defense to said action.

On December 19, 1973, the lower court heard the petitions to vacate and the evidence informed the court as follows:

As to Martin:

That its local service agent forwarded the summons and petition to Martin's attorney in Washington, D. C., where it was received March 11, 1973; that he contacted Martin (Corporation) and requested information and was informed the type of equipment involved was never sold by Martin to Rent; that he (the attorney) notified the agency which sold product liability insurance to Martin, and mailed all correspondence to that agency; and that he had no further knowledge until October 10, 1973, when he received a telephone call from the insurance company. Martin further produced evidence that the agency mentioned above, to which papers were purportedly mailed by the attorney, could find no evidence of having received the papers mentioned and knew nothing of the accident or suit until it received calls from the office of Martin on September 27th, and October 10, 1973.

As to Rent:

A representative of Black and Decker and an agent of Rent stated collectively that in early March, 1973, the summons and petition served on Rent was delivered to the local Black and Decker representative, who stated that attorneys for Black and Decker would take care of the matter; that the summons and petition were delivered to Black and Decker's local service center and given to a person there, who was to forward them to a person in Towson, Maryland, for normal processing; and that it was understood Black and Decker attorneys would defend for all parties.

It appears that the default situation was forcibly brought to the attention of Martin and Rent when executions were issued on the judgments.

The Judge of the lower court stated, in pertinent part, that it was his opinion Mar-

tin and Rent were guilty of inexcusable negligence in handling their affairs pertaining to the lawsuit, and were "not entitled of right to any relief;" but the court was mindful the law did "not favor defaults or forfeitures, * * *," and that the court was clothed with a great deal of authority to exercise discretion in these matters. The court then stated Martin and Rent should be let in to defend by vacating the default judgments, but that they should jointly pay a $1000.00 attorney fee, assessed as costs, and the court costs by January 4, 1974, and if this were done the default judgments would be vacated.

Martin and Rent complied with this proviso and the default judgments were vacated.

Appellant contends the trial court did not have any discretion to vacate the default judgments when the defaulting parties were guilty of inexcusable neglect, even though they may have a defense to the action.

█ From our examination of Oklahoma decisions we do not find where we have ever adopted or applied this strict and categorical rule to situations involving vacations of default judgments. We have always emphasized the discretion vested in the trial judge to vacate default judgments where justice would better be served by permitting a litigant to have his "day in court." Also, members of this Court have on occasion been more impressed with the need to grant relief to a defaulting litigant than the lower court believed the party deserved. In the following cases we reversed the lower court's refusal to vacate default judgments: Haskell v. Cutler, 188 Okl. 239, 108 P.2d 146; First Nat. Bank of Okmulgee v. Kerr, 165 Okl. 16, 24 P.2d 985; Shuler v. Viger, 103 Okl. 129, 229 P. 280; Hamburger v. Fry (Okl.), 338 P.2d 1088.

In Singleton v. LePak (Okl.), 425 P.2d 974, the action was for damages for personal injuries. The summons was served on the defendant by serving a member of his family over the age of 15, to-wit, a 16 year old son, who did not give it to the defendant. Default judgment was rendered for $43,460.00 and upon petition to vacate being duly filed, the default judgment was vacated. We affirmed, because of the circumstances, including the amount of the default judgment rendered.

In Latson v. Eaton (Okl.), 311 P.2d 231, the defendant was served by delivering the summons to his wife, who permitted the summons to become "mixed with the other papers in her home, and that she never thought to give it to her husband." Default judgment was rendered against the defendant for $36,900.00, and the trial court denied defendant's application to vacate. We reversed on the grounds, inter alia, that no right of a stranger was involved, and that the application could well be granted without substantial delay or injustice, and denial might work a serious injustice.

Appellant relies strongly and quotes from two Arizona Court of Appeals' decisions to support his contention that we should reverse the lower court's vacation of the default judgment. They are, Marquez v. Rapid Harvest Co., 1 Ariz.App. 138, 400 P.2d 345 (same case 1 Ariz.App. 562, 405 P.2d 814), and Campbell v. Frazer Construction Co., 9 Ariz.App. 262, 451 P.2d 620 (same case 9 Ariz.App. 425, 453 P.2d 365), in which the Court of Appeals reversed the trial court's vacation of the respective default judgments. Our research discloses that these Court of Appeal decisions did not become final, that both were appealed to the Supreme Court, and in both instances the Supreme Court vacated the decisions of the Court of Appeals, affirmed the trial court's vacation of the judgments and remanded the cases to the respective trial courts. Marquez v. Rapid Harvest Co., 99 Ariz. 363, 409 P.2d 285, and Campbell v. Frazer Construction Co., 105 Ariz. 40, 459 P.2d 300.

In the Marquez case the summons was served on an employee of the defendant, who left the employ of the defendant within a few days after service of process, and

had failed to notify the corporation of the service. Default judgment was rendered against the defendant for $92,488.81. In the Campbell case the summons was served on Frazer (allegedly an experienced business man), who misread the summons so that he believed he had thirty days to answer rather than the actual time of twenty days. The summons did show a 30-day period, but it was for out-of-State service. A default judgment was rendered for $35,000.00. In both of the final Supreme Court decisions, supra, the reason, and the most persuasive reason to the court, for affirming the trial court's vacation of the default judgments was that the Appellate Court will hesitate to upset the discretion of the trial judge, and if there is some doubt which causes the court to hesitate on the motion such doubt should be resolved in favor of a trial on the merits.

The circumstances in the present case obviously impressed the Judge to the extent that he used strong language critical of the acts of the agents and representatives of Martin and Rent, but it was just as obvious he believed this did not deprive him of the right to exercise his discretion to resolve his doubt so as to promote the ends of justice to permit a trial on the merits. The exercise of discretion is not based on a mathematical formula. The trial judge may have thought, on reconsideration, that the proof at a trial on the merits could disclose a relationship or lack of relationship between Martin, Rent, and Black and Decker, completely at variance with the allegations of Appellant's petition; or that the judgment ($219,000.00) was disproportionate to the alleged injury; or that the letters of two doctors, which constituted the medical proof, predated the entry of the default judgment by too great a period of time; all to the prejudice of Martin and Rent.

These default judgments were rendered on August 28, 1973, at the heel of a long docket and evidently tried hurriedly. The medical evidence introduced at the trial consisted of Plaintiff's Exhibit 1 and Exhibit 2, as follows:

Exhibit 1 was a letter written by Plaintiff's Doctor, R. B. P. Jr., dated March 11, 1971. This report stated that Plaintiff's left leg was placed in a cast and that Plaintiff would be temporarily totally disabled for a period of approximately six months; that his post operative condition was satisfactory but that "he will have some permanent injury to his left leg region."

Exhibit 2 was a letter written by Plaintiff's eye Doctor, J. B. M., dated January 31, 1972, in which it was stated that "at the present time the eye will continue to be kept and not removed, and I think with a little luck he will not have this taken out at a later date."

The trial court may have thought that the medical evidence, which was reported many months before the default judgment was entered, could have caused him to enter a judgment in a much larger amount than should have been rendered. This could have been considered as a part of the discretion of the trial court in vacating the judgments.

In Midkiff v. Luckey, Okl., 412 P.2d 175, it was held that the trial court did not abuse its discretion in setting aside a default judgment against the defendant Yellow Cab Company, which had misplaced or lost the summons served upon its president due to confusion in its office and files because of a prior fire in the company offices. Therein we set forth those matters and reasons that justified or sustained the granting of an application to vacate a default judgment, as follows: in proceedings of this character each case must depend on the facts of the particular case; default judgments are never viewed with favor; litigated questions should be tried on their merits; it is the policy of the law to afford every party to an action a fair opportunity to present his side of a cause; an application to vacate a judgment, under 12 O.S.1971, § 1031, is addressed to the sound legal discretion of the trial court, and an

order vacating said judgment will not be disturbed on appeal unless it clearly appears that the trial court has abused that discretion; such discretion should always be exercised so as to promote the ends of justice, and a much stronger showing of abuse of discretion must be made where a judgment has been set aside than where it has been refused.

See also Chesnut v. Billings, Okl., 452 P.2d 138.

■ From our examination of the record in the present case we are unable to say, either as a matter of law or fact, that it clearly appears that the trial court abused its discretion in vacating the default judgments rendered against Bob Martin Corporation and Rent It Company, Inc.

Affirmed.

WILLIAMS, C. J., HODGES, V. C. J., and IRWIN, BERRY, LAVENDER and BARNES, JJ., concur.

SIMMS, J., concurs in result.