2003 OK CIV APP 21

**MARE OIL COMPANY, an Oklahoma corporation, Plaintiff/Appellee,**

v.

**DEEP BLUE ROYALTIES, L.L.C., a foreign corporation, and Les Ming, individually, Defendants/Appellants.**

No. 96,685.

Court of Civil Appeals of Oklahoma, Division No. 2.

Dec. 23, 2002.

Certiorari Denied Feb. 24, 2003.

ference in the statutory language considered in *Ruzika* and that applicable in the instant case.

Tony R. Burns, Anadarko, OK, for Plaintiff/Appellee.

Gregg R. Renegar, Joan A. Renegar, Kornfeld Franklin, Renegar & Randall, Oklahoma City, OK, for Defendants/Appellants.

Opinion by JERRY L. GOODMAN, Judge.

¶ 1 This is an appeal from the trial court's July 13, 2001, order granting judgment confirming a sheriff's sale of certain mineral interests sold to satisfy a debt between the parties. Appellants Deep Blue Royalties and Leslie Ming filed a motion to vacate an earlier default judgment which gave appellee Mare Oil title to the mineral interests which were then sold at the sheriff's sale. The issues on appeal are the correctness of the trial court's refusal to vacate the earlier default judgment and, if the default judgment is not vacated, the correctness of the trial court's July 13, 2001, order confirming the sheriff's sale.

## FACTS

¶ 2 On November 30, 1998, Mare Oil Company, an Oklahoma corporation, (Mare) loaned Deep Blue Royalties L.L.C, a foreign corporation (Deep Blue) $18,000. A letter purporting to define the terms of the agreement was faxed by Leslie Ming, Deep Blue's president, to Mare which stated:

1) MOC will loan a total of $18,000.00 to DBR....

2) DBR agrees to pay back the $18,000.00 loan within thirty (30) days from receipt thereof (December 30, 1998).

3) DBR agrees to deed thirty (30) net mineral acres, by a recordable Mineral Deed, Effective Date of First Sales, with full warranty of title, subject to this Letter Agreement, for MOC to file of record.

4) Upon re-payment of the loan of $18,000.00 to MOC on or before December 30, 1998, MOC will deed twenty seven (27) acres back to DBR, Effective Date of First Sales.

5) Failure of DBR to pay the $18,000.00 loan within the agreed amount of time, DBR shall forfeit the said thirty (30) acres to MOC and MOC and DBR shall owe each other nothing.

¶ 3 The agreement was signed by Ming, both individually and as president of Deep Blue, which did not repay the $18,000. On February 11, 2000, Mare filed a petition seeking either "specific performance" or "judgment against the defendant in the sum of $18,000, plus interest at the statutory rate accruing from the date of default, for costs, attorney fees and any other appropriate relief." That same day, Mare mailed summons to "Les Ming, 1155 Via Tranquila, Santa Barbara, CA 93110," which was returned as undeliverable on February 23, 2000, and to "Deep Blue Royalties, LLC % [sic] Les Ming, P.O. Box 536, Santa Barbara, CA 93102," which was returned as undeliverable March 13, 2000. The first address was that provided to Mare by Deep Blue as being the address of its president. The second address was registered as the business mailing address for Deep Blue Royalties.

¶ 4 On February 17, 2000, Mare's counsel sent a letter to the clerk of the Superior Court in Santa Barbara and an index search fee requesting any information on Deep Blue and Ming. On February 24, 2000, Mare mailed alias summons to "Deep Blue Royalties, LLC, % [sic] Les Ming, 427 S. Boston Ave., Ste. 1306, Tulsa, OK 74103," which was returned as undeliverable March 16, 2000. Mare made inquiry with the Oklahoma Secretary of State and checked relevant California telephone and corporate directories.

¶ 5 On April 28, 2000, Mare filed notice of publication and an affidavit for service by publication stating it had been unsuccessful in personally serving Deep Blue and Ming despite all due diligence. *The Anadarko Daily News* printed the notice on May 2, May 9, and May 16. On June 28, 2000, Mare filed a motion for default judgment. At the hearing for default judgment, Mare informed the trial court that attempts at personal service had been made, that telephone information, directories, and public utilities had been checked, and that contact with the secretary of state had been made in attempts to locate Deep Blue and Ming. Mare also sent a letter to the Clerk of the Superior Court in Santa Barbara, California, inquiring as to the whereabouts of Ming.

¶ 6 On July 17, 2000, the trial court entered a journal entry that decreed that Mare "have judgment with full rights of execution in the sum of $18,000.00, plus interest at the statutory rate of 9.5% per annum, accruing from January 30, 1999, until paid, plus attorney fees to be heretofore determined upon application and costs in the amount of $160.00."

¶ 7 On September 19, 2000, the writ of execution was filed. *The Anadarko Daily News* published notice of sale under execution on September 28 and October 5, 2000. The Caddo County Sheriff held the sale on October 31, 2000. The property sold for $10,000. On November 1, 2000, Mare filed a motion to confirm the sheriff's sale.

¶ 8 On December 1, 2000, Deep Blue and Ming entered a special appearance to quash service, vacate and set aside the default judgment, and an objection to Mare's motion to confirm the sheriff's sale. Both parties agreed to allow the court to rule on the

issues of the special appearance and the default judgment, which was upheld in an order filed July 13, 2001. A second order, filed the same day, confirmed the sheriff's sale. Mare then filed a motion for deficiency judgment on July 20, 2001.[1]

¶ 9 Deep Blue appeals both July 13, 2001, orders, contending they are based upon the earlier, allegedly defective default judgment and should be reversed. Deep Blue further argues Mare's July 20, 2001, motion for a deficiency judgment is untimely.

## STANDARD OF REVIEW

¶ 10 Title 12 O.S.2001 § 1031(3), gives the district court power to vacate its own judgments for "irregularity in obtaining a judgment." The appellate standard of review is whether the trial court abused its discretion in refusing to vacate a default judgment. *Ferguson Enterprises, Inc. v. H. Webb Enterprises, Inc.*, 2000 OK 78, 13 P.3d 480; *Schepp v. Hess*, 1989 OK 28, 770 P.2d 34; *Burroughs v. Bob Martin Corp.*, 1975 OK 80, 536 P.2d 339. Lack of adequate notice violates due process which constitutes a judicial infirmity. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313–15, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950).

¶ 11 Title 12 O.S.2001 § 2004(C)(3)(a), states that "[s]ervice of summons upon a named defendant may be made by publication when it is stated in the petition, verified by the plaintiff or the plaintiff's attorney, or in a separate affidavit by the plaintiff or the plaintiff's attorney filed with the court, that with due diligence service cannot be made upon the defendant by any other method." In other words, notice by publication is clearly insufficient with respect to one whose name and address are known or readily ascertainable from sources at hand. Further, the mere gesture of attempting personal service does not rise to the level of due diligence. However, if "the facts before the court tend to show that the plaintiff conducted a diligent search for the whereabouts of the defendant by exhausting sources such as

official records and local directories, the court may agree that notice by publication is sufficient." *Blackgold Exploration Co. Ltd. v. First Federal Sav. & Loan Ass'n of Elk City*, 1990 OK 134, ¶ 13, 803 P.2d 1138, 1142. Once due diligence has been exercised, the probative facts of due diligence need not be set forth in the affidavit or in a verified pleading but they must be adduced by proof presented at the hearing conducted before judgment on service by publication is rendered. *Bomford v. Socony Mobil Oil Co.*, 1968 OK 43, 440 P.2d 713.

## ANALYSIS

¶ 12 Deep Blue challenges whether the statutory requirement of due diligence was met. The record indicates that other requirements, such as publication for three consecutive weeks, were satisfied and do not need to be addressed further.

¶ 13 Deep Blue cites *Blackgold* as dispositive. In *Blackgold,* the president and service agent of the defendant corporation had moved out of state. Plaintiffs hired a process server who attempted to serve the summons twice but failed, either because no one was at home or no one came to answer the door. Defendant's agent later produced an affidavit showing he had in fact lived at that address for several months prior to the "attempted service." The court held the attempted service was insufficient and did not constitute due diligence. *See also In re Tammie v. Rodriguez,* 1977 OK 182, 570 P.2d 332.

¶ 14 We find these cases distinguishable. Attempted service of a defendant at an address that proves to be incorrect is different than attempted service of an absent defendant at the defendant's correct address. Here, the record reflects Mare's representative actually went to the address in California personally rather than send a process server. The house at the California address was unoccupied. Mare's representative spoke with neighbors who stated that Ming did not reside at the address, a fact not disputed by Deep Blue. In *Blackgold* and *In re Tammie,*

---

1. This motion had not been resolved by the time the petition in error was filed, remains pending below, and is not at issue before us in this appeal.

the plaintiffs "could not catch" the defendants at their correct address because the plaintiffs did not exercise due diligence. Mare could not serve Ming at the California address because Ming did not actually live there. Mare went further by searching telephone and public utilities records. We agree with Deep Blue that notice is a cornerstone of due process as established by *Mullane* and its progeny. What Deep Blue fails to recognize, and what this court concludes, is that Mare had more than satisfied the "due diligence" requirement before asking the court to allow notice by publication.

¶ 15 We hold, based upon the record presented, that Mare's attempts at personal service satisfied the "due diligence" prerequisite for service by publication. Once service by publication was effected, which is not disputed, the trial court could properly grant a default judgment to Mare against Deep Blue. The trial court's July 13, 2001, order denying Deep Blue's motion to set aside the default judgment is affirmed.

### Breach of Contract

¶ 16 Mare's original complaint states that Deep Blue breached the contract because it "failed to repay any of the monies loaned" or to "deliver valid mineral deeds as security in that said deeds are defective in conveying marketable title." Deep Blue never refutes either of those claims, and we hold Deep Blue was in material breach of the contract because it failed to supply the agreed consideration and repay Mare. An injured party, upon breach of a contract, may sue for damages or for specific performance. *Hunt v. Van Siclen*, 1928 OK 719, 276 P. 182. Because Deep Blue never delivered valid title of the mineral deeds in exchange for the $18,000, which was never repaid, Deep Blue owed Mare $18,000. The trial court's judgment in favor of Mare for that amount is affirmed.

### Interest

¶ 17 Deep Blue contends that the trial court erred by awarding interest at the rate of 9.5 percent. The trial court's order awarded Mare the sum of $18,000, "plus interest at the statutory rate of 9.5% accruing from January 30, 1999, until paid." January 30, 1999, was the date the loan was to be repaid, not the date the petition was filed, or the date of judgment.

¶ 18 We hold the trial court's award of interest should be affirmed, but modified. The trial court was clearly attempting to award post-judgment interest to Mare, because the judgment awards $18,000, "plus interest . . . accruing until paid." This language clearly reflects the trial court's intent to add interest to the original judgment, *i.e.*, post-judgment interest. However, the trial court's reference to the date the loan was to be repaid as the date interest is to begin to accrue suggests the award of pre-judgment interest. This cannot be so, however, because the plaintiff's prayer for principal and pre-judgment interest becomes fixed as of the date of the judgment. Once judgment is rendered, pre-judgment interest stops accruing, but post-judgment interest begins to accrue.

¶ 19 Therefore, we consider the trial court's award of interest to be post-judgment in nature. The rate of post-judgment interest is governed by 12 O.S.2001 § 727(A). Because that rate has changed since the entry of judgment in 2000, the trial court's order is remanded with directions to modify the award of interest to reflect the annual changes set out in § 727(A).

¶ 20 Finally, we reject Deep Blue's argument that no interest shall be awarded because there was no contract provision calling for interest.[2] As set out above, the trial court did not award contract interest, but statutory post-judgment interest.

### Post–Judgment Motion for Deficiency Judgment

¶ 21 Mare sought a deficiency judgment from Deep Blue to recover the differ-

2. Had Deep Blue conveyed marketable title to the 30 mineral acres used as collateral, upon repayment, Mare would have reconveyed only 27 of those acres, thus retaining 3 acres as "interest" for Deep Blue's use of Mare's money. Because Mare never received marketable title, it could not retain any acreage as "interest."

ence between its $18,000 judgment and the $10,000 it recovered from the sheriff's sale of the mineral interests used as collateral for the promissory note. As noted earlier however, that motion remains unresolved and is not before us on appeal. Neither party has supplemented this record with the trial court's resolution of the motion, assuming such a resolution exists. Nevertheless, both parties spend considerable effort in their briefs on this issue. We need not resolve this matter, other than to note obtaining service on a defendant by publication only produces a judgment in rem, as opposed to a judgment based upon personal service. A judgment in rem cannot serve as the basis for recovering additional monetary damages from a defendant over which personal service has not been obtained. Thus, absent a general appearance by Deep Blue that would amount to a waiver of its objection to personal jurisdiction, 12 O.S.2001 § 2004(C)(3)(h), and *Rose v. Walker*, 1963 OK 39, 380 P.2d 702, would apply to preclude the entry of a deficiency judgment.

## CONCLUSION

¶ 22 In summary, we hold that the statutory requirement for "due diligence" was met and that notice by publication was proper. The award of damages was proper, as was the award—but not the rate—of post-judgment interest. The issue of the validity of the deficiency judgment is not before us. However, we remand the matter to the trial court for further proceedings as set out above. The opinion of the trial court is affirmed and the matter is remanded for further proceedings.

¶ 23 AFFIRMED AND REMANDED FOR FURTHER PROCEEDINGS.

COLBERT, P.J., and RAPP, J., concur.