2005 OK CIV APP 101

**ST. JOHN MEDICAL CENTER,**
Plaintiff/Appellee,

v.

Janice D. BROWN, Defendant/Appellant.

No. 101,221.

Court of Civil Appeals of Oklahoma,
Division No. 2.

Oct. 25, 2005.

Terry L. Weber, Weber & Associates, P.C., Tulsa, OK, for Plaintiff/Appellee.

Allen Mitchell, Sapulpa, OK, for Defendant/Appellant.

Opinion by JANE P. WISEMAN, Judge.

¶ 1 In this action by St. John Medical Center (hereafter referred to as St. John Tulsa) to collect a debt, Defendant, Janice Brown, appeals an order of the trial court granting summary judgment to St. John Tul-

sa on Brown's petition to vacate the default judgment taken against her. The issue on appeal is whether the trial court abused its discretion under the circumstances of this case. Having reviewed the record and applicable law, we find that it did and reverse and remand for further proceedings.

¶2 On November 7, 2003, St. John Tulsa filed an action against Brown to collect unpaid medical bills. St. John Tulsa validly served the petition on Brown on November 17, 2003, and Brown delivered it the next day to her attorney, who had been representing her in a previous action filed in Creek County and voluntarily dismissed by St. John Tulsa's assignee. When Brown did not answer the petition, St. John Tulsa, without giving notice to Brown or her attorney, sought and received a default judgment against Brown; the default judgment was filed on January 12, 2004. On February 12, 2004, the trial court ordered Brown to appear at an asset hearing to be held on April 30, 2004. The order for asset hearing was served on Brown's attorney on March 30, 2004. This was the first time that Brown or her attorney learned that a default judgment had been taken against her.

¶3 The next day, Brown petitioned to vacate the default judgment pursuant to 12 O.S.2001 § 1031(7), "unavoidable casualty or misfortune, preventing the party from prosecuting or defending." The petition was verified by Brown's attorney, who pointed out that St. John Sapulpa, formerly Bartlett Memorial Medical Center, and Medical and Professional Accounts Control, Inc., d/b/a MED-PAC, as an assignee of St. John Tulsa, had previously filed actions in Creek County to collect debts from Brown.[1] The MED-PAC/St. John Tulsa case involved the same debt sought in the present action, and the same attorney has represented Brown in all of the cases.

¶4 When St. John Sapulpa and MED-PAC/St. John Tulsa voluntarily dismissed the Creek County actions on October 3 and September 22, 2004, respectively, the cases were at issue. In the MED-PAC/St. John

Tulsa case, Brown had filed an answer denying the indebtedness; her attorney also took the position that Brown did not authorize St. John Tulsa to render treatment and any indebtedness owed to St. John Tulsa was due to malpractice while she was a patient at St. John Sapulpa. The St. John Sapulpa case had proceeded even further in litigation—Brown had denied the indebtedness and claimed malpractice by St. John Sapulpa, discovery had been conducted, and the trial court had denied St. John Sapulpa's motion for summary judgment.

¶5 In the petition to vacate the default judgment, Brown's attorney also pointed out that Brown "herself was not and has not been remiss in proceeding with this case," and it was he who had failed to file an answer to avoid default. As to Brown's attorney's reasons for failing to file an answer, he described the situation as follows:

> As best can be reconstructed ..., the suit papers in this case were placed with the existing files in the two cases which had been dismissed. With the advent of Thanksgiving and personnel being gone, [Brown's attorney] did not assure that a file was set up and initial pleadings filed. Thereafter, the attention of [Brown's attorney] was diverted by the December murder of the son of one of his law associates and by the January deaths of relatives or [*sic*] another of his law associates. No attention was paid to this file until Order to Appear and Answer as to Property was served on [Brown's attorney] on March 30, 2004, after which the file in this case was located and reviewed and this petition prepared.

Brown argued that "the failure of her attorney to file the necessary pleadings to avoid default was unavoidable by defendant," Brown is blameless and should not be denied her right to present her valid defense to the claim of indebtedness, and vacation of the default judgment would not result in prejudice to St. John Tulsa or unreasonably delay the progress of the litigation.

---

1. The St. John Sapulpa case is CJ–2002–1163, and the MED–PAC/St. John Tulsa case is CJ– 2003–428.

¶ 6 St. John Tulsa moved for summary judgment on the petition to vacate. In response, Brown emphasized that questions of fact exist as to her defenses to the action—whether treatment was authorized, particularly in view of Brown's denial that the signature on the consent form is hers; whether the medical services were necessary and reasonable in amount; whether St. John Sapulpa's treatment of Brown caused the need for the treatment provided at St. John Tulsa; and whether St. John Tulsa or MED–PAC, as St. John Tulsa's assignee, owns the account sought to be collected. Brown further argued that, in light of the previous Creek County cases, St. John Tulsa knew that Brown disputed the claims against her, was aware that she was represented by counsel, and failed to notify Brown's attorney that it intended to take a default judgment against her.

¶ 7 The trial court granted St. John Tulsa's motion for summary judgment. Brown appeals.

¶ 8 A trial court's decision on a petition to vacate a default judgment on the ground of unavoidable casualty or misfortune is reviewed for an abuse of discretion to determine whether the trial court acted in a manner that furthers justice on the facts of the case. *American Bank of Commerce v. Chavis*, 1982 OK 66, ¶ 12, 651 P.2d 1321, 1324. Appellate courts have not been reluctant to grant relief to a defaulting litigant even where the trial court has denied such relief. *Burroughs v. Bob Martin Corp.*, 1975 OK 80, ¶ 13, 536 P.2d 339, 341; *State ex rel. Oklahoma Bar Ass'n v. Lobaugh*, 1988 OK 144, ¶ 13, 781 P.2d 806, 810.

¶ 9 While an attorney's negligence in handling litigation is imputed to the client, analysis of whether unavoidable casualty or misfortune has occurred involves the additional, more important question of "whether the gravity of the inadvertence or neglect of a party is such as ought, under the particular circumstances of each case, to deprive the neglectful party of his day in court." *American Bank*, 1982 OK 66 at ¶¶ 11–12, 651 P.2d at 1324. To be entitled to vacation of a default judgment, a party need not go so far as to show a lack of negligence or events that

" 'ordinary prudence could not guard against or prevent.' " *Id.* at ¶ 13, 651 P.2d at 1324 (quoting *Wagner v. Lucas*, 1920 OK 315, 193 P. 421). Such a rule is "unduly harsh and restrictive and tend[s] unjustly to reduce to ukase that which ought to be weighed and determined under all of the facts and circumstances of each case." *Id.* "The exercise of discretion is not based on a mathematical formula." *Burroughs*, 1975 OK 80 at ¶ 18, 536 P.2d at 342.

¶ 10 The Supreme Court has outlined several tenets that should be considered in determining whether the trial court abused its discretion in ruling on a motion to vacate a default judgment:

"[I]n proceedings of this character each case must depend on the facts of the particular case; default judgments are never viewed with favor; litigated questions should be tried on their merits; it is the policy of the law to afford every party to an action a fair opportunity to present his side of a cause; ... discretion should always be exercised so as to promote the ends of justice...."

*Id.* at ¶ 23, 536 P.2d at 342–43 (quoting *Midkiff v. Luckey*, 1966 OK 49, 412 P.2d 175). Trial courts should also consider whether the defaulting party had a valid defense, whether vacation could be granted without substantial delay or injustice, and whether allowing the default judgment to stand would work a serious injustice. *Id.* at ¶ 15, 536 P.2d at 341.

¶ 11 The circumstances of the instant case weigh heavily in favor of granting Brown relief from the default judgment. St. John Tulsa sought to recover from Brown a debt for medical care, the same debt that was at issue in the MED–PAC/St. John Tulsa case in Creek County. The debt was also tied to the debt owed by Brown to St. John Sapulpa that was at issue in the St. John Sapulpa case in Creek County. Brown had denied in the Creek County cases that she owed the debts and had vigorously defended against the St. John Sapulpa case.

¶ 12 When Brown received the petition in the instant case, she did what she was supposed to do—she delivered it to the attorney who had been representing her in the related

Creek County cases. Her attorney placed the petition in the file that already existed for the Creek County cases, but, due to internal office procedure problems and personal events in his life, he did not respond to the petition. St. John Tulsa took a default judgment against Brown, without giving her notice that it intended to do so or that it had attained the default judgment.[2] The order setting asset hearing was not entered until 31 days after the filing of the default judgment, making it impossible for Brown to seek vacation under 12 O .S.2001 § 1031.1, a much easier task than seeking vacation under § 1031.

¶ 13 Brown and her attorney first learned of the default judgment when they were served with the order to appear for an asset hearing. Upon receipt of the order and first learning of the default judgment, Brown's attorney immediately filed a petition to vacate the default judgment. A little over two and one-half months had passed between the time of the taking of the default judgment and Brown's petition to vacate.

¶ 14 Considering the facts of this case—especially that Brown has stated a defense to this case, the case is related to previous litigation between the parties, Brown delivered the petition to her attorney, St. John Tulsa knew that Brown had previously been represented, and Brown's attorney quickly responded upon learning of the default judgment—it must be concluded that the trial court's denial of the petition to vacate the default judgment does not further justice. The default judgment would work a serious injustice against Brown, and there has been no showing that vacation of the default judgment would cause substantial delay or injus-

tice. The trial court abused its discretion in granting summary judgment on Brown's petition to vacate. The order is reversed, and the case is remanded for further proceedings.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

REIF, P.J., and GABBARD, J., concur.

---

2. We recognize that, because Brown had not filed an appearance or an answer in the instant case, St. John Tulsa was not under a legal duty to provide Brown or her counsel with notice of taking the default judgment. *See* Rule 10 of the Rules for District Courts, 12 O.S.2001, ch. 2, app.1. Nor was St. John Tulsa required to mail a file-stamped copy of the default judgment to Brown or her counsel. *See* 12 O.S.2001 § 696.2.(B). Nonetheless, considering that St. John Tulsa knew Brown was represented by counsel in the Creek County actions involving the same debts and that Brown vigorously opposed the Creek County actions, St. John Tulsa's failure to give notice militates in favor of finding that

Brown should be granted relief from the default judgment. The *Standards of Professionalism,* adopted by the Oklahoma Bar Association's Board of Governors and the Oklahoma Judicial Conference in 2002, state in Section 3, entitled "Lawyers' Responsibilities to Other Lawyers," Standard 3.8 "Default Judgment" that: "We will seek a default judgment in a matter in which an appearance has been made or *where it is known that the defaulting party is represented by a lawyer with respect to the matter,* only after giving the opposing party sufficient advance written notice to permit cure of the alleged default." (Emphasis added.)