Cite as 2025 Ark. 120

# SUPREME COURT OF ARKANSAS

| | |
|---|---|
| | **Opinion Delivered:** June 12, 2025 |
| IN RE RULE ON JUDICIAL DISCIPLINARY ENFORCEMENT: INTERIM SUSPENSION | |

**PER CURIAM**

In response to a request of the Judicial Discipline and Disability Commission to adopt a rule on the interim suspension of judges, the court hereby adopts a modified version of the American Bar Association Model Rule on interim suspension. The new rule will appear as Rule 1.4 in the Rules of Judicial Conduct. The adoption of this rule requires the amendment of Rule 2.16 of the Rules of Judicial Conduct. The adoption of Rule 1.4 and the amendment to Rule 2.16 of the Rules of Judicial Conduct are effective immediately.

## Rule 1.4 of the Rules of Judicial Conduct – Judicial Disciplinary Enforcement: Interim Suspension

1. **Criminal Prosecution.** Without the necessity of Commission action, the Supreme Court may immediately place a judge on interim suspension with pay upon notice of the filing of an indictment, information, or complaint charging the judge with a "serious crime" under state or federal law.

2. **Definition of "Serious Crime."** A "serious crime" is any felony or lesser crime that reflects adversely on the judge's honesty, trustworthiness or fitness as a judge in other respects, or any crime a necessary element of which, as determined by the statutory or common law definition of the crime, involves interference with the administration of justice, false swearing, misrepresentation, fraud, deceit, bribery, extortion, misappropriation, theft or an attempt, conspiracy or solicitation of another to commit a "serious crime."

3. **Other Misconduct.** Upon receipt of sufficient evidence demonstrating that a judge poses a substantial threat of serious harm to the public or to the administration of justice,

the Supreme Court may place the judge on interim suspension with pay pending a final determination in any proceeding under either the JDDC rules or these rules.

4. **Definition of "Other Misconduct."** A judge engages in "other misconduct" when he or she poses a substantial threat of serious harm to the public or to the administration of justice that reflects adversely on the judge's honesty, trustworthiness or fitness as a judge in other respects.

"Other misconduct" includes, but is not limited to, witness intimidation, retaliation, or a threat thereof. Judges who are under investigation or who have been charged with violations of the Code of Judicial Conduct shall not engage in any act that constitutes witness intimidation, retaliation, or a threat thereof.[1] This includes: (a) Direct or indirect intimidation and direct or indirect threats of retaliation or harm; (b) Communication with Commission witnesses regarding the substance of the investigation, except as allowed by other Rules of Procedure or as allowed by the Commission; (c) Misusing judicial authority to influence witnesses; or (d) Any other act or communication, whether direct or indirect, that may reasonably be perceived as an attempt to interfere with the investigative or litigation process.

5. **Commission Action.** If credible evidence of intimidation, retaliation, threats of intimidation or retaliation, or other similar misconduct exists, the Commission staff shall

---

[1]A witness is any individual with knowledge or information relevant to an investigation or hearing conducted by the Commission, including but not limited to complainants, court personnel, litigants, attorneys, or other judges.

Intimidation is any act, communication, or behavior by a judge under investigation or who has been charged with violations of the Code of Judicial Conduct that is intended to or has the effect or coercing, threatening, harassing, or unduly influencing a witness's participation in or testimony during an investigation or hearing. Intimidation may also be proven by words, actions, or other behaviors accumulated that establish a pattern of conduct. Intimidation may be direct or indirect. Intimidation often occurs with involvement from other individuals. Examples of intimidation include but are not limited to confronting witnesses, unnecessary written communications, unnecessary verbal communications, unnecessary interactions with witnesses, abuse of judicial power, and questions about a person's involvement in a JDDC investigation or case.

Retaliation is any adverse action or behavior taken against an individual in response to their actual or believed participation in reporting misconduct, cooperating in an investigation, or providing testimony or evidence to the Commission staff. Retaliation may be direct or indirect. Retaliation often occurs with involvement from other individuals. Examples of retaliation include but are not limited to professional repercussions such as termination or demotion, threats, harassment, coercion, intimidation, or abuse of judicial power. Retaliation may be proven by words, actions, or other behaviors accumulated.

2

conduct an expedited investigation pursuant to Rule 10 of the JDDC Rules of Procedure. This investigation may include, but is not limited to, interviews, collection of communications, issuance of subpoenas, and review of judicial orders or actions.

6. **Commission Attorney Action.** Upon receiving credible evidence of criminal prosecution or other misconduct as described above, Commission attorneys shall take one or more of the following interim actions:

    i. Issue a cease-and-desist letter to the judge under investigation. Commission staff shall incorporate the letter into the investigation materials and provide it to the investigation panel;

    ii. Recommend to the Supreme Court that the judge be subject to sanctions by the Supreme Court;

    iii. Recommend to the Supreme Court that the judge be temporarily suspended with pay as determined by the Supreme Court;

    iv. Notify appropriate law enforcement if criminal conduct is suspected as outlined in Rule 7 of the JDDC Rules of Procedure.

7. **Requests to File Under Seal and to Conduct in Camera Hearings.** The Commission and the Respondent may request that documents filed with the Supreme Court be sealed and that any hearings be conducted in camera; however, the Supreme Court retains sole discretion to grant or deny such requests. To the extent this provision conflicts with Rule 7 of the JDDC Rules of Procedure, this provision controls.

8. **Effect of Interim Suspension With Pay.** A judge's interim suspension shall not preclude action by the Commission with respect to the conduct that was the basis of the recommendation or the underlying complaint. In addition, this will not affect the filing of additional complaints pertaining to the judge's misconduct.

9. **Motion for Reconsideration.** A judge suspended with pay may apply to the Supreme Court for reconsideration of the order pursuant to Rule 12 of the JDDC Rules of Procedure.

10. **Applicability.** This rule applies to pending and future complaints. This Rule works in conjunction with the JDDC Rules of Procedure, however, in instances of a conflict between the two, this Rule controls. As used herein, "judge" is synonymous with justice, judge- or justice-elect, judicial candidate, and special judge or justice.

## Commentary

The integrity of the judicial system demands prompt action whenever a judge has been formally charged with a serious crime. Consequently, the Supreme Court should bypass the normal Commission procedure and act directly to temporarily suspend the judge pending final determination of the charges.

Almost all cases in which a judge is charged with a felony will result in an interim suspension; however, these rules give the Supreme Court discretion to impose an interim suspension in all cases in order to preserve the independence of the judiciary. If suspension were mandatory, the Supreme Court would be required to suspend a judge even if the court was convinced that the complaint against the judge was filed only for political reasons.

A judge charged with conduct that constitutes a felony in another jurisdiction but does not constitute a felony in Arkansas should be subjected to interim suspension only if, upon petition by an investigative panel of the Commission or the Supreme Court or upon its own motion, the Supreme Court determines that interim suspension is required.

In determining whether to proceed on a disciplinary complaint when criminal charges have been filed, disciplinary counsel and the Commission should consider the effect that a disciplinary investigation might have on the criminal investigation. Where it is appropriate, disciplinary counsel should consult with the prosecuting attorney or law enforcement authority before proceeding.

If the judge is found not guilty or if the judge's conviction is reversed on appeal, the Supreme Court should review the order of interim suspension and either continue it or vacate it. An acquittal or dismissal does not preclude proceedings by the Commission.

Certain misconduct poses such an immediate threat to the public or the administration of justice that the judge should be suspended from the bench immediately, pending a final determination of the ultimate discipline to be imposed. Interim suspension is also appropriate when the judge's continuing conduct is causing or is likely to cause serious harm to the administration of justice.

In such cases, it may be necessary for the Supreme Court to impose interim suspension or administrative leave to maintain public confidence in the judiciary.

Rule 2.16 of the Rules of Judicial Conduct is amended as follows.

### Rule 2.16 – Cooperation With Disciplinary Authorities

(A) A judge*, justice, special judge/justice, judicial candidate, or judge-elect* shall cooperate and be candid and honest with judicial and lawyer disciplinary agencies.

(B) A judge*, justice, special judge/justice, judicial candidate, or judge-elect* shall not ~~retaliate~~ *engage in intimidation or retaliation*, directly or indirectly, against a person known or suspected to have assisted or cooperated with an investigation of a judge*, justice, special judge/justice, judicial candidate, judge-elect* or a lawyer.

**COMMENT**

[1] Cooperation with investigations and proceedings of judicial and lawyer discipline agencies, as required in paragraph (A), instills confidence in judges' commitment to the integrity of the judicial system and the protection of the public and may be considered by the judicial and lawyer discipline agencies as a mitigating factor.

*[2] Intimidating or retaliatory behavior undermines public trust in the judiciary and may have a chilling effect on a witness's willingness to cooperate.*

The terminology section is updated to include the definitions in footnote one for witness, intimidation, and retaliation.

The application section is updated as follows:

*Rule 2.16 applies to judges, justices, special judges/justices, judicial candidates, and judges elect.*

> WOOD, J., concurs.

> BAKER, C.J., and HUDSON, J., dissent.

**RHONDA K. WOOD, Justice, concurring**. I concur to address three points raised in the dissenting opinion. First, there is the argument that this Rule somehow provides less due-process protection for judges than currently exists. I would argue it provides more. The rule provides guidelines previously nonexistent. Consider two examples of interim suspensions entered in the recent past without any related rule. In 2015, now former District

Judge Joseph Boeckmann was effectively suspended two days after an investigation regarding him was made public. He was ordered to not preside over any cases pending resolution of the discipline investigation. Chief Justice Jim Hannah entered an order without notice relieving now former Circuit Judge Mike Maggio of his duties when allegations of his improper online comments under a pseudonym became public.

I contend that judges in Arkansas would prefer the new Rule that provides written parameters. As to the argument that attorney suspension is on par with judicial discipline when one is with pay and the other without, that is a red herring by the dissent.

Second, the dissent suggests this could be an ex post facto rule. Again, as explained, the court has always had this authority so arguably the application of this Rule would not be ex post facto, rather the Rule sets out parameters for the current authority. Third, the dissent states it would prefer a comment period, which is something this court routinely does with rules of court practice and procedure. But judicial rules are different, and even when this court made substantial changes to the Arkansas Code of Judicial Conduct it did so without a notice period. *See In re Ark. Code of Judicial Conduct*, 2016 Ark. 470.

**COURTNEY RAE HUDSON, Justice, dissenting.** Because I have serious reservations about the court's hasty adoption of the new "Rule on Judicial Disciplinary Enforcement: Interim Suspension," I cannot join the per curiam. Protection of the public from judges who commit crimes or engage in misconduct is a worthy endeavor. We should be deliberate and comprehensive in our approach, while also recognizing the constitutional rights of the individuals involved. For the reasons that follow, this new rule is problematic.

First, we already have a rule that addresses interim sanctions against a judge. Rule 10 of the Rules of Procedure of the Arkansas Judicial Discipline and Disability Commission authorizes the Commission to recommend to this court that a judge be suspended with pay pending the outcome of a disciplinary determination. Why are we not simply amending this already existing rule rather than adopting an entirely new rule that is arguably inconsistent with the current one?

The new rule also presents legitimate due-process concerns. It contains absolutely no requirement that notice be provided to the impacted judge either before or after the interim suspension or that the judge be allowed an opportunity to respond to an allegation of misconduct. The new rule also fails to specify the procedure for challenging a suspension; instead, it simply states that the judge may "apply to the Supreme Court for reconsideration pursuant to Rule 12 of the JDDC Rules of Procedure." Neither Rule 12 nor this new provision indicates when such a motion must be filed, however. Furthermore, the procedures for reconsideration are even more unclear when the interim suspension is imposed by this court on its own motion, as Rule 12 is primarily related to reviewing the actions and decisions of the Commission.

In contrast, our rules governing the conduct of attorneys contain detailed procedures in the event of an interim suspension. *See* Ark. Sup. Ct. P. Regulating Prof'l Conduct § 16. The attorney "shall be given immediate notice of interim suspension," and may file an affidavit in rebuttal and a request for dissolution or modification of the suspension. *Id.* § 16(B). A panel of the Committee on Professional Conduct then convenes to reconsider the suspension, and the attorney must be given prompt notice of its decision. *Id.* The attorney

may also file a petition for a writ of certiorari with this court. *Id.* § 16(E). Despite section 16's detailed post-suspension procedure, this court has nonetheless recently expressed a clear preference that attorneys be provided with notice and a hearing *before* any interim suspension is imposed. *Hutchinson v. Ark. Sup. Ct. Comm. on Prof'l Conduct*, 2023 Ark. 86, 666 S.W.3d 82. In fact, we directed the Committee "to revisit our rules and submit proposed revisions to this court that provide more due process protections." *Id.* at 3, 666 S.W.3d at 84. This court rightly noted:

> In today's world of instant communication and Zoom hearings, minimal notice and an opportunity to be heard imposes no real burdens. And this court and its committees must lead by example by having rules that provide ample procedural due process protections.

*Id.*, 666 S.W.3d at 83. The court's adoption of this new rule today is blatantly inconsistent with this recent pronouncement.[1] Why would the majority afford judges of our state less due process than attorneys?

We should give equal consideration to the promulgation of judicial rules of conduct as we do the rules of professional conduct for lawyers. The oversight of judicial conduct deserves no less attention to detail than the discipline of the bar and as much input from the bench and bar. Judges must know, and deserve to know with clarity, the rules by which they are held accountable and the procedures by which the rules will be enforced. While this court has, in extreme cases, exercised its constitutional superintending authority to

---

[1]Also, in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), the Supreme Court of the United States held that, before termination, a public employee with a property right in continued employment is entitled to notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. *See also Ashby v. Civ. Serv. Comm'n of Douglas Cnty.*, 241 Neb. 988, 492 N.W.2d 849 (1992) (extending *Loudermill* protections to a temporary suspension).

remove judges pending disciplinary proceedings, *this new rule adds an entirely new category of "other misconduct" that drastically expands the grounds* set out in Rule 10 of the Rules of Procedure of the Arkansas Judicial Discipline and Disability Commission, which provides for an interim suspension only "[i]n instances of the (1) filing of an indictment or information charging a judge with a felony under state or federal law, or (2) the filing of a misdemeanor charge against a judge or justice where his ability to perform the duties of his office is adversely affected[.]"

Without further elaboration, the concurrence suggests that the new rule provides guidelines previously nonexistent and that judges in Arkansas would prefer the new rule that provides written parameters as opposed to the status quo. Again, I agree that judges in Arkansas would prefer—and deserve—clear guidelines concerning this court's authority to place judges on interim suspension; however, that has not been achieved through the adoption of this new rule. We need more. We should be careful not to confuse the adoption of this new rule with affording a judge due process—in other words, we should not confuse activity with achievement.

In addition to the new rule's failure to provide procedural due-process protections, it also raises another constitutional concern. Section 10 of the new rule states that it applies to both pending and future complaints. Because it does not specify that it applies only to future conduct related to a pending complaint, the rule as written appears to encompass conduct that occurred prior to its adoption, which violates the Ex Post Facto Clauses of the Arkansas and United States Constitutions. This court has previously recognized that when a sanction is punitive in nature, the judicial enlargement of that sanction may be subject to

an ex post facto challenge. *Cambiano v. Ark. State Bd. of Law Examiners*, 357 Ark. 336, 167 S.W.3d 649 (2004). Regardless of whether this court has always had the authority to broadly place judges on an interim suspension as the concurrence claims, it is beyond dispute that this new rule adds the entirely new category of "other misconduct," which enlarges the currently recognized grounds for which a judge may be placed on an interim suspension.

Furthermore, the new rule's vague language and lack of specificity is also troubling. How long can an interim suspension last? Under the new rule, the length of time is indeterminate. In sum, the new rule leaves too many important questions unanswered.

We should look to the rules in other jurisdictions to answer these questions and address the constitutional concerns I have noted. For example, in Nevada, the Commission on Judicial Discipline procedures set out circumstances under which a judge shall be suspended with pay or may be suspended without pay; they require seven days' notice of intent to suspend and an opportunity to respond. Further, "the Commission shall hold a public hearing before ordering such a suspension, unless the judge waives the right to the hearing." Nev. Rev. St. Ann. 1.4675 (West, Westlaw through Ch. 3 of the 83rd Reg. Session (2025)). Another shortcoming of our new rule is that it fails to ensure that a judge who would like a public hearing gets one. As written, section 7 of the new rule allows the Judicial Discipline and Disability Commission, in addition to the respondent judge, to request that documents filed with this court be sealed and that any hearings be conducted in camera; this court "retains sole discretion to grant or deny such requests." Again, this conflicts with a recent decision of this court. In *Spencer v. State*, 2025 Ark. 91, ___ S.W.3d ___, we vacated the circuit court's gag order because it implicated the appellant's "right to

10

a public trial as well as the public's right to know how its officials are conducting [the] criminal proceedings." *Spencer*, 2025 Ark. 91, at 7, ___ S.W.3d at ___. A concurring opinion in *Spencer* recognized that "if openness 'enhances . . . the appearance of fairness so essential to public confidence in the system,' then secrecy has the opposite effect—it erodes trust." *Id*. at 27, ___ S.W.3d at ___ (Bronni, J., concurring) (quoting *Press-Enter. Co. v. Superior Ct. of California, Riverside Cnty.*, 464 U.S. 501, 508 (1984)). It is disconcerting that the majority of this court appears to be concerned with "Star Chamber-like" secrecy only when it involves another court's proceedings. *See id*. at 28, ___S.W.3d at ___ (Bronni, J., concurring).

In addition to Nevada, other jurisdictions also address the due-process concerns I have raised. *E.g.*, Or. R. App. P. 12.27(2)(c)(iii) (amended effective Jan. 1, 2025) (requiring written notice of proposed suspension and allowing fourteen days for the judge to file a memorandum in response); S.D. Codified Laws § 16-1A App'x (Westlaw, SD ST APP CH 16-1A Rule III(11) through the 2025 Reg. Session and Supreme Ct. R. 25-16) (providing procedure for notice and a show cause hearing before the commission prior to a recommendation for interim suspension); W. Va. Const. art. 8, § 8 (requiring notice and an opportunity to be heard); Va. Code Ann. § 17.1-911 (West, Westlaw through 2024 Reg. and Spec. Sessions) (requiring notice and, within fifteen days of suspension, a hearing).

Finally, rather than adopting this new rule to be effective immediately, I would publish the new rule for comment. This is our standard practice when amending or adopting rules, and I see no reason to deviate from that practice here. Arkansas judges and attorneys may have additional insights and contributions that this court has not considered. Rather

than guessing as to how the bench and bar would react to the new rule as the concurrence does, I suggest that we actually ask them, listen in earnest, and incorporate their valuable input.

I respectfully dissent.

BAKER, C.J., joins.